# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Altareek Grice,

      Plaintifff

      v.

PBC Beverages Company, *et al*.,

      Defendant.

**17-CV-8853 (JPO)**

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARYAPPROVAL OF CLASS ACTION SETTLEMENT**

**Table of Contents**

I.    Background and overview of the Settlement ...................................................6

    A.    Procedural Background...................................................................8

    B.    The allegations of Plaintiff's Complaint....................................9

    C.    Defendant's Defenses....................................................................9

    D.    The settlement.............................................................................10

II.    The proposed settlement. ..............................................................................10

    A.    The Proposed Settlement Class...................................................10

    B.    Benefits to the Settlement Class. ...............................................11

    C.    Notice to class members. ............................................................12

    D.    Claim Form Procedures. .............................................................13

    E.    Right to Opt Out. .......................................................................14

    F.    Objections. .................................................................................15

    G.    Release provisions. .....................................................................16

    H.    Attorneys' Fees and Expenses ...................................................17

    I.    Representative Incentive Payment. .............................................18

    J.    Class Administration Expenses...................................................18

    K.    Class Action Fairness Act Notice ..............................................18

III.    The proposed settlement satisfies the requirements for class certification.......................18

    A.    Rule 23(a) requirements are met.................................................19

        1.    Numerosity........................................................................19

        2.    Commonality.....................................................................20

        3.    Typicality. ........................................................................20

        4.    Adequacy of Representation. ...........................................21

    B.    Rule 23(b)(3)'s requirements are met.........................................22

        1.    Predominance....................................................................22

        2.    Superiority. .......................................................................23

    C.    The Class Notice meets the requirement of Rule 23(c) ........................................25

        1.    Contents of Notice. ..........................................................25

        2.    Manner of Notice. ............................................................25

IV.    The settlement is appropriate for preliminary approval.................................25

    A.    The settlement is fair, adequate and reasonable.........................25

B.     The parties engaged in arm's length settlement negotiations. ...............................28

C.     The proponents of the settlement are experienced...............................................28

D.     Public policy considerations support preliminary approval....................................29

V.    Conclusion. ..........................................................................................................................29

## Table of Authorities

## Cases

*Amchem Products, Inc. v. Windsor (1997) 521 U.S. 591* ........................................... 24

*Baby Neal for and by Kanter v. Casey (3d Cir. 1994) 43 F.3d 48* ......................................... 20, 21

*Bernhard v. TD Bank, N.A. (D.N.J., Oct. 5, 2009, No. CIV.08-4392RBK/AMD) 2009 WL 3233541* .................................................................................................................... 20, 22

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper (1980) 445 U.S. 326* .............................. 23

*Eisen v. Carlisle and Jacquelin (1974) 417 U.S. 156* .................................................. 25

*Eisenberg v. Gagnon (3d Cir. 1985) 766 F.2d 770* ...................................................... 20

*Fishbein v. Druz (E.D. Pa., Sept. 21, 1989, No. CIV. A. 89-5987) 1989 WL 110863* ................. 23

*General Telephone Co. of Southwest v. Falcon (1982) 457 U.S. 147* ......................................... 21

*Gilliam, 2008 U.S. Dist. LEXIS 23016* ...................................................................... 17

*Haynes v. Logan Furniture Mart, Inc. (7th Cir. 1974) 503 F.2d 1161* ...................................... 24

*In re BGI, Inc. (Bankr. S.D.N.Y. 2012) 465 B.R. 365* .................................................... 26

*In re Blech Sec. Litig., No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002)* ................................................................................................................ 17

*In re Checking Account Overdraft Litig., 2012 U.S. Dist. LEXIS 56115* .................................... 26

*In re CP Ships Ltd. Securities Litigation, 578 F.3d 1306, 1317-18 (11th Cir. 2009)* ................. 26

*In re Mexico Money Transfer Litigation (7th Cir. 2001) 267 F.3d 743* ...................................... 26

*In re MicroStrategy, Inc. Securities Litigation (E.D. Va. 2001) 148 F.Supp.2d 654* .................. 28

*In re NASDAQ Market-Makers Antitrust Litigation, 187 F.R .D. 465, 483-85 (S.D.N.Y.1998)* .. 17

*In re PaineWebber Ltd. Partnerships Litigation (S.D.N.Y. 1997) 171 F.R.D. 104* ....................... 26

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions (3d Cir. 1998) 148 F.3d 283* ................................................................................................... 20, 21, 22, 23

*Jackson v. Southeastern Pennsylvania Transp. Authority (E.D. Pa. 2009) 260 F.R.D. 168* ........ 19

*Johns v. DeLeonardis (N.D. Ill. 1992) 145 F.R.D. 480* ................................................... 19

*Murray v. GMAC Mortg. Corp. (7th Cir. 2006) 434 F.3d 948* ............................................. 26

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co. (E.D. Pa. 1968) 43 F.R.D. 452* .................. 19

*Riordan v. Smith Barney (N.D. Ill. 1986) 113 F.R.D. 60* ................................................ 19

*Rolland v. Cellucci (D. Mass. 2000) 191 F.R.D. 3* ......................................................... 28

*Stewart v. Abraham (3d Cir. 2001) 275 F.3d 220* ........................................................ 20

*Stewart v. Rubin (D.D.C. 1996) 948 F.Supp. 1077* ....................................................... 28

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F.Supp.2d 254, 261-62 (S.D.N.Y.2003)* ..................................................................................................... 17

*Sullivan v. DB Investments, Inc.* (3d Cir. 2011) 667 F.3d 273 ..................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.2005) ............................... 17

*Zeno v. Ford Motor Co., Inc.* (W.D. Pa. 2006) 238 F.R.D. 173 .................................................. 22

## Statutes

*15 U.S.C. 1681* ............................................................................................................................. 9

*15 U.S.C. 1681b* ........................................................................................................................... 9

## Rules

*Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627, at * *8-9 (S.D.N.Y. Nov. 16, 1999) ........................................................................................................ 17

*Cohen v.. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) .......................................................................................................................................... 17

*Fed.R.Civ.P. 23(a)* ..................................................................................................................... 18

*Fed.R.Civ.P. 23(b)* ............................................................................................................... 18, 19

*Fed.R.Civ.P. 23(c)* ..................................................................................................................... 25

*In re Crazy Eddie*, 824 F.Supp. 320, 326 (E.D.N.Y.1993) ......................................................... 17

*In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 596-597 (S.D.N.Y.1992) 17

*Rule 23(b)(3)* .............................................................................................................................. 22

## Other Authorities

*1 Newberg on Class Actions, § 3:6 (4th Ed.)* ............................................................................. 19

*Advisory Committee Note to 1996 Amend. to Rule 23* ................................................................ 24

Plaintiff, ALTAREEK GRICE ("Named Plaintiff" or "Plaintiff") and Defendant Bottling Group, LLC (erroneously sued as Pepsi Beverages Company) ("Defendant" or "PBC"), collectively referred to herein as the "Parties," file this Joint Motion ("Joint Motion") with incorporated Memorandum of Law seeking an Order: (1) preliminarily approving the Settlement Agreement between the Named Plaintiff, the putative class, and Defendant; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement.

## I.  BACKGROUND AND OVERVIEW OF THE SETTLEMENT

On June 19, 2017, Plaintiff filed this action in the California Superior Court for the County of San Diego, which PBC then removed to United States District Court for the Southern District of California. Pursuant to PBC's unopposed motion, the case was transferred to the United States District Court for the Southern District of New York.

Plaintiff asserted a cause of action against PBC for alleged violations of the Fair Credit Reporting Act ("FCRA") relating to PBC's alleged procurement of consumer reports regarding employees or prospective employees without complying with its obligations under the FCRA. Specifically, Plaintiff alleged one claim for relief for PBC's alleged violation of 15 U.S.C. Section 1681b(b)(2), alleging that PBC procured or caused to be procured a consumer report regarding Plaintiff and that PBC violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure."

The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant. The settlement provides for settlement payments to be made to approximately 23,133 members who are part of the Section 1681b(b)(2) class. Defendant will create a common fund for Class Members of $1,192,275 in gross settlement funds. Members of the class will receive a gross *pro rata* amount

of the settlement fund totaling approximately $51.54. This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts.

The estimated total net settlement class payment if all class members submit a valid Claim Form will be approximately $710,775, which will be allocated on a pro rata basis. The estimated net settlement amount is based on Class Counsel's contingent attorneys' fee award of 1/3 of the common fund, totaling an amount not to exceed $397,387 and subject to this Court's approval, Class Counsel's costs in prosecuting this matter, which will not exceed $20,000, the proposed Class Representative Service Payment to Plaintiff for an amount not to exceed $5,000, and an amount not to exceed $59,000 for Settlement Administration Costs provided by American Legal.

If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and a Class Representative service award, and each Settlement Class Member submits a valid Claim Form, the parties anticipate that each Settlement Class Member who makes a claim will receive a net payment of at least approximately $30.73.

If the total amount claimed by Settlement Class Members is less than 60% of the Net Settlement Fund, the payments made to the Settlement Class Members will proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms will equal 60% of the Net Settlement Fund. Any amounts of the Net Settlement Fund over the Sixty Percent (60%) minimum that are not claimed by any Class Members by the Response Deadline shall not be paid and shall remain the exclusive property of Defendant.

Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces. If any such payment is returned by the U.S. Postal Service as undeliverable, or is uncashed or not negotiated before it expires, neither Defendant nor the Settlement Administrator nor Class Counsel shall have any further obligations to Plaintiff or any Settlement Class Member, except that:

a.   For any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will re-mail the check to the forwarding address;

b.   If a Settlement Class Member contacts the Settlement Administrator or Class Counsel to request a replacement check before the initial check is negotiated, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check, but the replacement check shall expire on the same date as the original check; and

Provided the total uncashed check remainder is at least $20,000 after distributing the Net Settlement Fund and after the initial 90-day period for negotiating checks, any uncashed settlement compensation in the Settlement Fund (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis via check to those Settlement Class Members who timely negotiated the first checks they received, who shall have ninety (90) days from the date these Second Settlement Payment checks are mailed to negotiate the second checks.

Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount and after the second 90-day period for negotiating the second distribution checks will constitute a *cy pres* fund which will be donated to Metropolitan Dallas United Way, subject to Court approval.

For the reasons set forth below, this Court should preliminarily approve the proposed settlement because it is fair and reasonable.

**A.   Procedural Background.**

Named Plaintiff filed the Complaint in the Superior Court of California, County of San Diego on June 19, 2017. On September 11, 2017, Defendants filed their Notice of Removal, and the case was transferred to the United States District Court Southern District of California. Defendants filed their answer to Plaintiff's Complaint on September 18, 2017. On September 27,

2017, Defendants filed their Motion to Change Venue to the Southern District of New York, and this Honorable Court granted Defendant's motion on November 1, 2017.

**B.      The allegations of Plaintiff's Complaint.**

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes." Specifically, Plaintiff asserts one claim for relief for Defendant's alleged violation of 15 U.S.C. Section 1681b(b)(2), alleging that Defendant violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure."

Named Plaintiff's Complaint sought to have certified the following class:

> All individuals as to whom, during the period from June 19, 2015 through and including December 1, 2016, a consumer report for employment purposes was procured by Bottling Group, LLC.

Defendant represents that there are approximately 23,133 members of the Settlement Class.

**C.      Defendant's Defenses.**

Defendant asserted numerous defenses to Plaintiff's claim. Specifically, Defendant denies that it violated the FCRA as to Plaintiff and/or any putative class members and contends that its disclosure and authorization forms do not violate the FCRA and that in any event it did not willfully violate the FCRA.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by the Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. The Settlement Agreement and this

Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

> **D.     The settlement.**

During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Classes, information on Defendant's business, and the FCRA disclosure and authorization/consent form used by Defendant.

After months of document and information exchanges between the Parties and a day-long mediation with Hunter Hughes, a highly respected mediator, a settlement agreement was reached based on the mediator's proposal and additional post-mediation negotiations. Plaintiff and Defendants informed this Honorable Court that they had reached a settlement in principle on January 31, 2018.

The Parties have now executed a settlement agreement (the "Settlement Agreement") attached as Exhibit 1 to the Declaration of Peter R. Dion-Kindem, for which they now seek the Court's preliminary approval.

## II.     THE PROPOSED SETTLEMENT.

> **A.     The Proposed Settlement Class.**

The Settlement Agreement defines the proposed Settlement Class as follows:

> All individuals as to whom, during the period from June 19, 2015 through and including December 1, 2016 (for applicants); June 19, 2015 through and including September 4, 2017 (for employees subject to Department of Transportation background checks); and June 19, 2015 through and including October 2, 2017 (for all other employees), a consumer report for employment purposes was procured by Bottling Group, LLC, Grayhawk Leasing, LLC, or New Bern Transport Co.

Bottling Group, LLC, Grayhawk Leasing, LLC, and New Bern Transport Co. sometimes are referred to, individually or collectively, as "Pepsi Beverages Company," or "PBC"—the defendant named in this Action.

    **B.      Benefits to the Settlement Class.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay $1,192,275 to the Common Fund. The gross *pro rata* share for each Class Member is $51.54.

The estimated total net settlement class payment if all class members submit a valid Claim Form will be approximately $710,850, which will be allocated on a *pro rata* basis. The estimated net settlement amount is based on Class Counsel's contingent attorneys' fee award of 1/3 of the common fund, totaling an amount not to exceed $397,425 and subject to this Court's approval, Class Counsel's costs in prosecuting this matter, which will not exceed $20,000, the proposed Class Representative Service Payment to Plaintiff for an amount not to exceed $5,000, and an amount not to exceed $59,000 for Settlement Administration Costs.

Based upon representations made by the Defendant, the Settlement Class is comprised of approximately 23,133 members, If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and a Class Representative service award, and all Settlement Class Members participate, the parties anticipate that each Settlement Class Member who makes a claim will receive a net payment of at least approximately $30.73.

If the total amount claimed by Settlement Class Members is less than 60% of the Net Settlement Fund, the payments made to the Settlement Class Members will proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms will equal 60% of the Net Settlement Fund. Any amounts of the Net Settlement Fund over the Sixty Percent (60%) minimum that are not claimed by any Class Member by the Response Deadline shall not be paid and shall remain the exclusive property of Defendant.

Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces.

Provided the total uncashed check remainder is at least $20,000 after distributing the Net Settlement Fund and after the initial 90-day period for negotiating checks (which total uncashed first check remainder will be calculated by the Settlement Administrator at least 30 days following the 90-day check expiration date), any uncashed settlement compensation in the Settlement Fund (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis via check at least 60 days following the 90-day first check expiration date as a Second Settlement Payment to those Settlement Class Members who timely negotiated the first checks they received, who shall have ninety (90) days from the date these Second Settlement Payment checks are mailed to negotiate the second checks, after which the checks will expire.

Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount and after the second 90-day period for negotiating the second distribution checks will constitute a *cy pres* fund which will be donated to Metropolitan Dallas United Way, subject to Court approval.

**C.    Notice to class members.**

The Parties have agreed to use American Legal to provide notice and administer the settlement. American Legal has a provided a "not to exceed" cost estimate of $59,000.

Not later than fifteen (15) calendar days after the Court has issued the Preliminary Approval Order, PBC shall disclose the names and last known addresses of members of the Settlement Class to the Settlement Administrator. No later than thirty (30) calendar days after receipt of such information, the Settlement Administrator will mail the Notice (Exhibit B to the Settlement Agreement) to all Settlement Class Members via first-class U.S. Mail, postage

prepaid and return service requested to such Settlement Class Member's last known mailing address, as updated by using the U.S. Postal Service's database of verifiable mailing addresses (the CASS database) and the National Change-of-Address database. The Notice shall bear the Settlement Administrator's mailing address as the return-mail address. The Notice will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Southern District of New York" and may also include a bar code.

The Settlement Administrator shall also make available the Notice to all members of the Settlement Class via a settlement website.

For all Notices returned to the Settlement Administrator without forwarding addresses, the Settlement Administrator will use publicly available databases as practicable to update those Settlement Class Members' addresses and will cause the Notice to be re-mailed by the Settlement Administrator to such Settlement Class Members who can be located.

The Settlement Administrator will establish and staff a toll-free telephone line that members of the Settlement Class can use to contact the Settlement Administrator with questions about the settlement or to change their addresses.

A Claim Form (Exhibit A to the Settlement Agreement) will also be included as part of the mailing.

**D.    Claim Form Procedures.**

To receive a portion of the Net Settlement Fund, all members of the Settlement Class must submit a timely Claim Form by the Response Deadline (60 days after mailing of the Notice). The Claim Form is designed to confirm the location and correct address of each Settlement Class Member--individuals who submitted online employment applications and background check forms dating back more than three years and, for many, with whom Defendant's only interaction was the submission of the employment application and background check online screens (i.e., they were not hired as employees).  Without this important Claim Form, checks would be distributed to improper addresses and/or individuals and checks almost

certainly would be cashed by non-Settlement Class Members.  The date of the postmark on the return mailing envelope or the timestamp on the fax or if submitted electronically through the Claims Administration website, will be the exclusive means to determine whether a Claim Form has been timely submitted. However, it is not the intention of the Parties to exclude Class Members from participating in the Settlement for technical reasons that do not interfere with the orderly administration of the Settlement. Therefore, the Settlement Administrator will compile a list of claims rejected solely for failure to cure an unsigned Claim Form

If the Settlement Class member's Claim Form or Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter ("Cure Letter") within three (3) business days of receiving the defective submission to advise the Class Member that his or her submission is defective and that the defect must be cured to render the Claim Form or Request for Exclusion valid. The Class Member will have until the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, to postmark, fax, or electronically submit a revised Claim Form or Request for Exclusion. If a Class Member responds to a Cure Letter by filing a still-defective claim, then the Claims Administrator will have no further obligation to give notice of a need to cure. If the revised Claim Form is not postmarked, received by fax, or electronically submitted within the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, it will be deemed untimely.

### E.      Right to Opt Out.

All members of the Settlement Class will have the right to be excluded from, *i.e.*, to "opt out" of, the Settlement Class. On or before the Response Deadline, each member of the Settlement Class who elects to opt out of the settlement must send, by first-class U.S. mail, written notice addressed to the Settlement Administrator indicating his or her name and address and stating that he or she desires to opt-out of the settlement or otherwise does not want to

participate in the settlement. Any member of the Settlement Class who does not timely (as measured by the postmark on that individual's written notice) opt out of the settlement by written notice directed to the Settlement Administrator and containing the requisite information shall remain a member of the Settlement Class and shall be bound by any Orders of the Court about the Settlement or the Settlement Class. Any member of the Settlement Class who fails to timely and validly opt out of the Settlement shall be bound by the terms of this Settlement. If more than 2,500 members of the Settlement Class (approximately 11%) validly, timely, and individually opt out of the class, then Defendant may in its sole discretion exercise its right to void the Settlement, in which case this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ante as if they had not entered into this settlement. In that event, the settlement and all negotiations and proceedings related to the settlement will be without prejudice of the rights of the Parties, and evidence of the settlement, negotiations, and proceedings will be inadmissible and will not be discoverable.

     **F.**    **Objections.**

     Any member of the Settlement Class who wishes to object to the settlement must return to the Settlement Administrator a timely written statement of objection no later than the Response Deadline. The Notice of Objection must state (1) the case name and number; (2) the name, address, telephone number, and email address (if any) of the member of the Settlement Class making the objection; (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the final Fairness Hearing, if the Settlement Class Member making the objection intends to appear; (6) a list of any witnesses the Settlement Class Member making the objection may call to testify at the Final Approval Hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which that such objector may offer at the Final Approval Hearing. Any objection must be personally signed by the objector.

No member of the Settlement Class shall be entitled to contest in any way the approval of the terms and conditions of this Agreement or the Court's Final Approval Order except by filing and serving written objections in accordance with the provisions of this Settlement Agreement. Any member of the Settlement Class who fails to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections, whether by appeal or otherwise, to the settlement.

The Settlement Administrator shall provide any objections and backup information to Defendant's Counsel and Class Counsel, who shall file same with the Court at least seven days before the Final Approval Hearing or as otherwise ordered by the Court.

### G.    Release provisions.

On the Settlement Effective Date, all members of the Settlement Class who have not timely and properly opted out of the settlement, and all those acting or purporting to act on their behalf including, but not limited to, their successors, assignees, legatees, heirs, and personal representatives, fully and forever release, waive, acquit, and discharge Defendant and the Released Parties to the fullest extent permitted by law from any and all Released Claims.

Released Parties is defined as:

> Grayhawk Leasing, LLC, New Bern Transport Co, and Defendant Bottling Group, LLC (which sometimes are referred to, individually or collectively, as "PBC Beverages Company," or "PBC"), and its and their predecessors, successors, subsidiaries, parents, and assigns, and any and all of their past, present and future directors, officers, trustees, employees, attorneys, agents, servants and representatives, whether in their individual or official capacities.

"Released Claims" is defined as:

> All claims alleged in the Litigation (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§§ 1681b(b)(2)(A)) and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether the factual

basis is known or unknown at the time the release is approved by the Court.  The period of the Released Claims extends to the limits of the Covered Period.

**H.     Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees and up to $20,000 for reimbursement of costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees not to oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

The one-third fee is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in the Second Circuit." (*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir.2005); *see Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F.Supp.2d 254, 261-62 (S.D.N.Y.2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litigation,* 187 F.R .D. 465, 483-85 (S.D.N.Y.1998) (collecting cases).)

Class Counsel's request for one-third of the Settlement Fund is typical in class action settlements in the Second Circuit. (*See, e.g., Gilliam,* 2008 U.S. Dist. LEXIS 23016; *Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F.Supp.2d at 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.,* No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627, at * *8-9 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v.. Apache Corp.,* No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer Litigation,* 142 F.R.D. 588, 596-597 (S.D.N.Y.1992) (33 1/3% of settlement fund approved for attorneys' fees); *In re Crazy Eddie,* 824 F.Supp. 320, 326 (E.D.N.Y.1993) (33.8% of settlement fund approved for attorneys' fees, plus costs).)

Here, the attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.

     **I.**     **Representative Incentive Payment.**

The Settlement Agreement provides for a Class Representative Service Payment to Plaintiff for an amount not to exceed $5,000, subject to Court approval.

     **J.**     **Class Administration Expenses.**

The Settlement Agreement provides for the payment of $59,000 for Settlement Administration Costs to be provided by American Legal.

     **K.**     **Class Action Fairness Act Notice**

Defendant will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA"). Defendant will timely serve upon the appropriate State official of each State in which a Settlement Class member resides and the United States Attorney General, a notice of the proposed settlement, in accordance with 28 U.S.C. § 1715, and will file a notice of compliance with the Court. This must be done within ten days of the filing of the Parties' proposed Settlement Agreement to satisfy CAFA requirements.

**III.**     **THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.**

To conditionally certify the class, the Court must apply the six (6) prerequisites under Fed.R.Civ.P. 23(a) and 23(b)(3). The Rule 23(a) requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class: (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. (Fed.R.Civ. P. 23(a).) Federal Rule 23(b)(3) adds two additional requirements including (5) predominance of common questions and (6) superiority of the action as a class action. Rule 23(b)(3) requires the Court to find that:

(3) . . . the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. R. Civ. P., Rule 23(b)(3).)

**A.**     **Rule 23(a) requirements are met.**

  **1.**     **Numerosity.**

The determination as to whether joinder is impracticable focus on several factors as explained in 1 Newberg on Class Actions, § 3:6 (4th Ed.):

> . . . number is only one of several considerations. Apart from class size, factor relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members,) size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. (footnotes omitted)

Thus, citing and relying on *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.* (E.D. Pa. 1968) 43 F.R.D. 452, 463, this treatise further explained:

> In the final analysis, the court should take the kind of common sense approach that was surely contemplated by the drafters of the rule. This approach is typified by the court in Philadelphia Electric Co. v. Anaconda American Brass Co. in which the court rejected the defendants' contention that one of the plaintiff classes which had 25 members failed to meet the Rule 23(a)(1) prerequisite: "While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits if one will do." (footnote omitted).

Courts, therefore, have found that a class with less than 36 members meets the Rule 23(a)(1) requirement. (*Johns v. DeLeonardis* (N.D. Ill. 1992) 145 F.R.D. 480, 483 ( A class of Gypsies and subclass of 25 female Gypsies were certified in an action against police officers alleging unlawful searches and invasions of privacy during a raid of a Chicago Gypsy council meeting.); *Riordan v. Smith Barney* (N.D. Ill. 1986) 113 F.R.D. 60, 62 (29 members in securities class).) There is no requirement that a Plaintiff allege the exact number of class members. (*Jackson v. Southeastern Pennsylvania Transp. Authority* (E.D. Pa. 2009) 260 F.R.D. 168, 186.)

There is no question that the class meets the numerosity requirement. In this case, there are over 23,000 total Settlement Class Members. These numbers are certainly sufficient to establish that joinder is impracticable.

### 2.   Commonality.

"The Commonality requirement will be satisfied if the names plaintiffs share at least one question of law or fact with the grievances of the prospective class." (*Stewart v. Abraham* (3d Cir. 2001) 275 F.3d 220, 227.) Even where there are some factual differences among class members, as long as there is a common question of law or fact, class certification will not be defeated. (*Bernhard v. TD Bank, N.A.* (D.N.J., Oct. 5, 2009, No. CIV.08-4392RBK/AMD) 2009 WL 3233541, at *3 (quoting *Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48, 57).)

Here, by definition, members of the Settlement Class share the same questions of law and fact. The members of Settlement Class are alleged to be the victims of policies and procedures whereby Defendant, in violation of the FCRA, did not give a lawful disclosure to consumers when it procured consumer reports for employment purposes.

The theories of liability as to all Settlement Class members, therefore, arise from the same practices and present basic questions that are common to all class members.

### 3.   Typicality.

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." (*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 311; *accord Bernhard*, *supra*, 2009 WL 3233541, at *4 (citing *Baby Neal*, 43 F.3d. at 57)).)

The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. (*Eisenberg v. Gagnon* (3d Cir. 1985) 766 F.2d 770, 786.) Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged

from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members. (*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156-57 [102 S.Ct. 2364, 2370, 72 L.Ed.2d 740].)

Here, Plaintiff asserts a claim that arises from the same policies, procedures and course of conduct that give rise to the claims of the other class members. Plaintiff and the putative class members were subject to the same course of conduct by Defendant in the manner in which it provided a background check disclosure and authorization to class members. Finally, Plaintiff and the putative class members were subject to the same alleged failures to provide legal disclosures and obtain legal authorizations.

The same claim is advanced on behalf of all the Settlement Class Members. Plaintiff is a Settlement Class Member, and Plaintiff's claims thus rest on the same legal and factual issues as those of the Settlement Class Members. Consequently, in seeking to prove Plaintiff's claims, Plaintiff will necessarily advance the claims of Settlement Class Members. Although Rule 23 does not require claims be identical, if the claims are identical, typicality is established. (*Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48, 57.)

### 4.    Adequacy of Representation.

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. Adequacy of representation is a two-part inquiry: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. (*In re: Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d at 312.)

Here, Plaintiff has no interests that are antagonistic to the interests of the Settlement Class. Plaintiff and all Class Members have an interest in proving that the Defendant violated its obligations under the FCRA when it allegedly improperly obtained and used their consumer reports for an employment purpose.

Plaintiff will also fairly and adequately represent the interests of the Settlement Classes. Plaintiff has retained qualified and experienced attorneys to represent him and the class in this matter. The attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.

**B.      Rule 23(b)(3)'s requirements are met.**

Once the Plaintiff carries the burden of demonstrating that the Rule 23(a) requirements are met, there are two additional considerations that the court must undertake pursuant to Rule 23(b): predominance and superiority. (*Bernhard*, 2009 WL 3233541, at *4.) Under Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. (*In re Prudential*, 148 F.3d at 314.)

**1.      Predominance.**

In *Sullivan v. DB Investments, Inc.* (3d Cir. 2011) 667 F.3d 273, 297, the Court explained that the predominance inquiry examines the cohesiveness of the proposed class claims:

> The predominance inquiry " 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' " In re Ins. Broker. Antitrust Litig., 579 F.3d 241, 266 (3d Cir.2009) (quoting Amchem, 521 U.S. at 624, 117 S.Ct. 2231), and assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated," Fed.R.Civ.P. 23(b)(3) advisory committee's note to 1966 amendment.

Predominance is satisfied when "there exists generalized evidence which provides or disproves an element on a simultaneous, class wide basis, since such proof obviates the need to examine each class members' individual position." (*Zeno v. Ford Motor Co., Inc.* (W.D. Pa. 2006) 238 F.R.D. 173, 196-97 (citing *Allapattah Servs. Inc., v Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2009)).) The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, *i.e.*

- Whether Defendant failed to provide lawful, timely notice when obtaining consumer reports for employment purposes;
- Whether Defendant's notice violated the FCRA;
- Whether Defendant's violation was willful.

Because these issues are common, and indeed are determinative of Settlement Class Members' claims, they far outweigh – predominate over – the importance of any individual issues particular to Class Members.

Plaintiff's claims are subject to generalized proof of (1) whether the disclosure and authorizations used by Defendant to procure background checks were compliant. The actual form disclosure and authorization forms that gives rise to the class claim were similarly deficient to the forms used for all class members, *i.e*, the addition of provisions other than the "disclosure."

### 2.    Superiority.

Finally, this Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3). (*In re Prudential*, 148 F.3d at 315.) The factors to be considered here in determining the superiority of the class mechanism are (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. (*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427]; *Fishbein v. Druz* (E.D. Pa., Sept. 21, 1989, No. CIV. A. 89-5987) 1989 WL 110863 (quoting *Deposit Guaranty*, "The aggregation of individual claims in the context of a class wide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they employ the class-action device.").)

Efficiency is the primary focus in determining whether a class action is indeed superior. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." (*Haynes v. Logan Furniture Mart, Inc.* (7th Cir. 1974) 503 F.2d 1161, 1165.) To determine superiority, courts also consider the anticipated amount of recovery for each plaintiff, noting that class actions are particularly appropriate where multiple lawsuits are infeasible because of the small amount of any individual remedy. (*See* Advisory Committee Note to 1996 Amend. to Rule 23.)

In this case, there are over 23,000 class members for whom the facts and issues involved are identical for all class members. The class members are persons who allegedly suffered a violation of their rights under the FCRA, but whose damages may be relatively modest or difficult to measure and therefore have a remedy by statute. For the individual class member, each one may have little incentive and few resources to pursue litigation on his or her own. There are no manageability concerns. The class action is the best method of resolving the matter. (*See Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 617 [117 S.Ct. 2231, 2246, 138 L.Ed.2d 689] ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (*quoting Mace v. V an Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).)

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly considering the relatively small amount of statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied.

24

### C.     The Class Notice meets the requirement of Rule 23(c)

#### 1.     Contents of Notice.

The proposed Notice, a copy of which is attached to the Settlement Agreement as Exhibit B, meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).[1] The proposed Class Notice satisfies each of the foregoing requirements. The Class Notice summarizes the nature of the pending FCRA Litigation and the Settlement Agreement's essential terms, defines the class to be certified, identifies the class claims, issues and defenses, provides each Settlement Class member with an individualized, projected gross and net settlement payment. The Class Notice also states that a Settlement Class member may enter an appearance through counsel and describes the process by which Settlement Class members may exclude themselves, and the time, manner, and process for doing so and the binding effect of a class judgment on class members.

#### 2.     Manner of Notice.

An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *(Eisen v. Carlisle and Jacquelin* (1974) 417 U.S. 156 [94 S.Ct. 2140, 40 L.Ed.2d 732] (noting that individual mailings satisfy Rule 23(c)(2)).)

### IV.   THE SETTLEMENT IS APPROPRIATE FOR PRELIMINARY APPROVAL.

### A.     The settlement is fair, adequate and reasonable.

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of

---

[1] Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must concisely state in plain, easily understood language:

    (i)      the nature of the action;
    (ii)    the definition of the class certified;
    (iii)   the class claims, issues, or defenses;
    (iv)   that a class member may enter an appearance through an attorney if the member so desires;
    (v)    that the court will exclude from the class any member who requests exclusion;
    (vi)   the time and manner for requesting exclusion; and
    (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. (*In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)).)

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *(In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).)

As set forth above, continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Because this case settled not long after filing, Named Plaintiff had yet to survive class certification and summary judgment. Each of these phases of litigation presented serious risks, which the Settlement allows named Plaintiff and the Settlement Class to avoid. (*See, e.g. In re PaineWebber Ltd. Partnerships Litigation* (S.D.N.Y. 1997) 171 F.R.D. 104, 126, *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litigation* (2d Cir. 1997) 117 F.3d 721 ("Litigation inherently involves risks.").)

Courts reviewing the issue of fairness have favored settlements that allow partial recovery for class members where the results of suits are uncertain. (*Murray v. GMAC Mortg. Corp.* (7th Cir. 2006) 434 F.3d 948, 952 ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litigation* (7th Cir. 2001) 267 F.3d 743; *In re BGI, Inc.* (Bankr. S.D.N.Y. 2012) 465 B.R. 365, 379 (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful.

Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23-24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").)

In the FCRA context, the gross *pro rata* Settlement Class member recovery of $51.54 and the net pro rata amount of $30.73 if all Settlement Class Members file a valid Claim Form in this Settlement is in line with per-class member settlement amounts in similar cases under the FCRA. (*See, e.g. Ernst v. Dish Network, LLC*, (S.D.N.Y.) 1:12-cv-08794 ($12.74 net to disclosure class members if all made a claim); *Simons v. Aegis Communications Group,* No. 2:14-cv-04012, Order Granting Preliminary Approval (W.D. Mo. Oct. 15, 2014) (ECF No. 29) (preliminarily approving improper disclosure settlement with payment of $35 per class member); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (approving settlement providing for $54 gross amount per class member); *Aceves v. AutoZone*, Case No. 5:14-CV-02032 (C.D. Cal. 2016) (granting final approval; 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member).)

The Settlement therefore is within the range of other large-scale FCRA class action cases. The Settlement was reached after pre-mediation discovery and an all-day mediation that resulted in a mediator's proposal and subsequent negotiation by the parties. Class Counsel, in weighing the benefits and detriments to the Class, found that there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 to $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed.

The settlement amount is appropriate where other district courts have determined that other alleged violations, similar to Defendant's alleged violation, do not constitute "willful violations" as a matter of law and consideration of the risks and costs attendant to an appeal, which, if successful, would still require a trial on the merits.

Under the Parties' Settlement Agreement, the Settlement Class members can quickly realize a significant portion of their possible FCRA claims from the Settlement Fund, even if the amount is slightly less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. That the class members can achieve this recovery without the costs and risk of continued litigation clearly establishes the fairness and adequacy of the settlement as a preliminary matter.

The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

### B.      The parties engaged in arm's length settlement negotiations.

This action has been vigorously litigated by the parties and sufficient discovery has been obtained by Plaintiff to assess the strengths of their respective claims and defenses. The parties also engaged in a full-day mediation with a respected mediator, which was helpful in resolving the matter.

### C.      The proponents of the settlement are experienced.

Counsel are experienced in consumer and wage and hour class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. (*See, e.g., In re MicroStrategy, Inc. Securities Litigation* (E.D. Va. 2001) 148 F.Supp.2d 654, 665; *Stewart v. Rubin* (D.D.C. 1996) 948 F.Supp. 1077, 1087 *aff'd* (D.C. Cir. 1997) 124 F.3d 1309; *Rolland v. Cellucci* (D. Mass. 2000) 191 F.R.D. 3, 6.) In counsel's opinion, there is no obvious deficiency in the class settlement.

#### D.    Public policy considerations support preliminary approval.

This case is brought under the Fair Credit Reporting Act, a statute that recognizes the importance of allowing the prosecution of cases on behalf of consumers whose rights have been violated by enacting a fee-shifting provision as part of the statute. The settlement is consistent with the public interest because it is consistent with the proper administration of justice and the purpose of the FCRA in ensuring that job applicants receive a meaningful disclosure and authorization.

## V.    CONCLUSION.

The Parties have reached a Settlement in this case that provides genuine relief to Class Members. The Settlement is an excellent result considering the contentiousness of the litigation and the challenges faced by the Plaintiff. Each Class Member who makes a claim is entitled to a cash recovery under the Settlement, regardless of whether they were aware Defendants' conduct potentially violated the FCRA. In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through appeal satisfy the requirements for preliminary approval. Accordingly, the Plaintiff and Defendant request the Court for an Order preliminarily approving the Settlement.


Dated: April May 2, 2018                    /s/ *Marc R. Edelman*
                                            Marc R. Edelman (pro hac vice)
                                            Florida Bar Number: 96342
                                            MORGAN & MORGAN P.A.
                                            201 N. Franklin Street, Suite 700
                                            Tampa, Florida 3306
                                            Main No.: 813-577-4722
                                            Facsimile: 813-257-0572
                                            Email: medelman@forthepeople.com

                                            Peter R. Dion-Kindem (pro hac vice
                                            forthcoming)
                                            Peter R. Dion-Kindem, P.C.
                                            21550 Oxnard Street, Suite 900
                                            Woodland Hills, CA 91367
                                            peter@dion-kindemlaw.com

Lonnie C. Blanchard, III (pro hac vice
forthcoming)
The Blanchard Law Group, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
lonnieblanchard@gmail.com

Luis A. Cabassa (pro hac vice
forthcoming)
Florida Bar Number: 0053643
Brandon J. Hill (pro hac vice
forthcoming)
Florida Bar Number: 37061
Donna V. Smith (pro hac vice
forthcoming)
Florida Bar Number: 661201
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
lcabassa@wfclaw.com
bhill@wfclaw.com

*Attorneys for Plaintiff*