# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Altareek Grice,<br><br>        Plaintiff,<br><br>        v.<br><br>Pepsi Beverages Company, *et al.*,<br><br>        Defendant. | **17-CV-8853 (JPO)**<br>**CLASS ACTION**<br><br>**DECLARATION OF PETER R. DION-KINDEM IN SUPPORT OF MOTION FOR PRELIMINARYAPPROVAL OF CLASS ACTION SETTLEMENT** |

I, Peter R. Dion-Kindem, declare:

1.    I am an attorney licensed to practice law in the State of California since 1980 and am co-counsel for Plaintiff Altareek Grice in this action. I have submitted to the court my application to appear in this matter *pro hac vice*. I have personal knowledge of the following facts.

2.    Attached as Exhibit 1 is a true and correct copy of the **STIPULATION RE CLASS ACTION SETTLEMENT** entered into by the Parties in this action. The Settlement is a product of litigation by tenacious opposing lawyers and extensive arms' length negotiations.  In my opinion as an experienced class counsel, the Settlement is fair, reasonable, adequate, and in the best interests of the Class.

3.    The facts set forth in the Memorandum in support of the motion for Preliminary Approval accurately reflect the procedural background and terms of the Settlement.

## Experience of Counsel

4.    I attended UCLA School of Law and graduated in 1980. I was admitted to the California bar in 1980 and have been practicing as a litigation attorney in state and federal courts in California and, on occasion, in other states, since such time. The focus of my practice is

almost exclusively civil litigation. I have extensive experience in copyright litigation, commercial litigation, employment litigation, professional malpractice litigation, appellate matters, and other civil litigation practice areas. I have extensive experience in wage and hour litigation, including class actions.

5.    I am admitted in all the federal courts of California, the Ninth Circuit, and the United States Supreme Court. I estimate that I have been counsel of record and briefed over 45 appeals and extraordinary writ petitions. Some of the published opinions in which I have been involved include *Epstein vs. MCA*, 50 F.3d 644 (9th Cir. 1995) (securities fraud), *Cloud v. Casey* (1999) 76 Cal.App.4th 895 (gender discrimination), and *Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925 (legal malpractice/breach of fiduciary duty), *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105 [167 Cal.Rptr.3d 832] (attorney fraud), and *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) (FCRA violations).

6.    I am a panel member of the Los Angeles County Referral Program for appeals and legal malpractice.

7.    I have extensive experience litigating wage and hour and FCRA class actions, employee rights' claims, and other claims in federal and state court.

8.    I was counsel of record in the following wage and hour class proceedings that were certified and/or finally approved:

- *Adauto v. Door Components Inc., et al*, Case No. BC469230, California Superior Court, County of Los Angeles

- *Arce v. MV Transportation, Inc., et al*, Case No. BC457702, California Superior Court, County of Los Angeles

- *Ayala v. Denbeste Manufacturing, et al*, Case No. S-1500-CV-275248 WDP, California Superior Court, County of Kern

- *Borchani-Torres v. Eisenhower Medical Center*, Case No. INC1201246, California Superior Court, County of Riverside

- *Brown and Griffin v. Steve's Oilfield Service, Inc., et al.*, Case No. S1500-CV-283801, Kern County Superior Court

- *Erlandsen v. FlexCare, LLC, et al.*, Case No. 1390595, California Superior Court, County of Santa Barbara

- *Espinoza, Wade v. Defender Security Company,* Case No. 2:15-cv-7142-CAS-JC, United States District Court, Central District of California – Western Division

- *Grande v. Lawrence Recruiting Specialists d/b/a LRS Healthcare*, Case No. 57 160 00080 13, American Arbitration Claim

- *Haakstad, et al. v. Fondnazio, et al.*, Case No. C15-02074, Contra Costa County Superior Court

- *Kirchner v. Shred-it USA Inc.*, CIV. 2:14-1437 WBS, 2014 WL 6685210 (E.D. Cal. Nov. 25, 2014)

- *Lagos v. The Leland Stanford Junior University*, Case No. 115CV284784, Santa Clara County Superior Court

- *Martinez-Taft v. Children's Hospital Central California*, Case No. MCV066748, California Superior Court, County of Madera

- *Meza v. LinkUs Enterprises, Inc., et al*, Case No. S-1500-CV-274733 LHB, California Superior Court, County of Kern

- *Meza v. Pacific Bell*, Case No. BCV-15101572, Kern County Superior Court

- *Oropeza v. Pick-N-Pull Auto Dismantlers, et al.*, Case No. RG11560441, Superior Court of California, County of Alameda

- *Poisson v. Dispatch Transportation, Inc., et al.*, Case No. RIC1504851, Riverside County Superior Court

- *Poisson v. Neal Trucking, Inc., et al.*, Case No. EDCV13-2241, United States District Court, Central District of California

- *Stone v. Universal Protection Service,* Case No. 01-15-0002-7497, American Arbitration Association

- *Watson v. Wells Fargo Bank, N.A.*, Case No. BC559193, Los Angeles County Superior Court

9.   I am counsel of record in the following pending wage and hour class/PAGA and FCRA class action proceedings:

- *Awad v. Elemental Energy, Inc.*, Case No. 1302544, Riverside County Superior Court

- *Camacho v. Shred-it*, Case No. 39-2014-00307879-CU-OE-STK, San Joaquin County Superior Court

- *Carney v. Geo Drilling Fluids*, Case No. BCV-15-101729, Kern County Superior Court

- *Dawson v. Wonderful Pistachios and Almonds, LLC, et al.*, Case No. BCV-17-100848, Kern county Superior Court

- *Grande v. Eisenhower Medical Center*, Case No. RIC1514281, Riverside County Superior Court

- *Gonzalez v. Corrections Corporation of America*, Case No. 1:16-cv-01891, United States District Court, Eastern District of California

- *Griffin v. First Solar, Inc., et al.*, Case No. 5:17-cv-03778-BLF, United States District Court, Northern District of California

- *Judge v. PAMA, et al*, Case No. 72 160 00975 12, American Arbitration Association

- *Kirchner v. First Advantage Background Services Corp., et al.*, Case No. 2:14-CV-01437-WBS-EFB, United States District Court, Eastern District of California

- *Lagos v. The Leland Stanford Junior University*, Case No. 15-CV-04524 KAW, United States District Court, Northern District of California

- *Larroque v. First Advantage LNS Screening Solutions, Inc., et al.*, Case No. CAV 535083, San Mateo County Superior Court

- *Liggitt v. Trueblue, Inc., et al.*, Case No. RIC1509572, Riverside County Superior Court

- *Miller v. Mud Check, Inc., et al.*, Case No. BCV-15-100921, Kern County Superior Court

- *McCray-Key v. Kaiser Hospital*, Case RG16801381, Alameda County Superior Court

- *Meza v. Verizon*, Case No. 16CECG00297, Fresno County Superior Court

- *Miller v. Mud-Check, Inc., et al.*, Case No. BCV-15-100921, Kern County Superior Court

- *Payton v. CSI Electrical Contractors, Inc.*, Case No. BC 525050, Los Angeles County Superior Court

- *Robinson v. Turning Point of Central California, Inc.*, Case No. 14CECG03685, Fresno County Superior Court

- *Roman v. Northrop Grumman Corp.*, Case No. 1220054497, Judicial Arbitration Mediation Services; LASC Case No. BC647361; Federal District Court Case No. 2:16-cv-06848-CAS-GJS

- *Syed v. M-I LLC, et al.*, Case No. 1:14-cv-00742-WBS-BAM, United States District Court, Eastern District of California

- *Trevino v. Golden State FC LLC, a Delaware Limited Liability Company; Amazon.com Inc.*, Case No. 2:17-cv-01904-KJM-CKD, United States District Court, Eastern District of California

- *Willis v. Enterprise Drilling Fluids, Inc., et al.*, Case No. 15-CV-00688-JLT, United States District Court, Eastern District of California

- *Wortham, et al. v. Turning Point of Central California, Inc.*, Case No. 15CECG02618, Fresno County Superior Court

### Adequacy of Counsel and Plaintiff

10.   No conflicts, disabling or otherwise, exist between Plaintiff and Class Members because Plaintiff has been subject to the same violations as the other class members and has the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery. Plaintiff stands in the same shoes as the Class Members as to the class claims and has the same incentives to maximize the overall recovery on such claims.

11.   I have no conflicts with any class members.

12.   I and my co-counsel have the desire, intention and ability to prosecute these claims and have been doing so in the face of strenuous opposition by Defendant.

### Procedural Background.

13.   Named Plaintiff filed the Complaint in the Superior Court of California, County of San Diego on June 19, 2017. On September 11, 2017, Defendant filed a Notice of Removal, and the case was transferred to the United States District Court Southern District of California. Defendant filed an answer to Plaintiff's Complaint on September 18, 2017. On September 27, 2017, Defendant filed a Motion to Change Venue to the Southern District of New York, and this Honorable Court granted Defendant's motion on November 1, 2017.

### The allegations of Plaintiff's Complaint.

14.   This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment

purposes." Specifically, Plaintiff asserts one claim for relief for Defendant's alleged violation of 15 U.S.C. Section 1681b(b)(2), alleging that Defendant violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure."

15. Named Plaintiff's Complaint sought to have certified the following class:

> All individuals as to whom, during the period from June 19, 2015 through and including December 1, 2016, a consumer report for employment purposes was procured by Bottling Group, LLC.

16. Defendant represents that there are approximately 23,133 members of the Settlement Class.

## Defendant's Defenses.

17. Defendant asserted numerous defenses to Plaintiff's claim. Specifically, Defendant denies that it violated the FCRA as to Plaintiff and/or any putative class members and contends that its disclosure and authorization forms do not violate the FCRA and that in any event it did not willfully violate the FCRA.

## The settlement.

18. During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Classes, information on Defendant's business, and the FCRA disclosure and authorization/consent form used by Defendant.

19. After months of document and information exchanges between the Parties and a day-long mediation with Hunter Hughes, a highly respected mediator, a settlement agreement was reached based on the mediator's proposal and additional post-mediation negotiations. Plaintiff and Defendants informed this Honorable Court that they had reached a settlement in principle on January 31, 2018.

6

20.    The Parties have now executed a settlement agreement (the "Settlement Agreement")
       attached as Exhibit 1 to the Declaration of Peter R. Dion-Kindem, for which they now
       seek the Court's preliminary approval.

### The Proposed Settlement Class.

21.    The Settlement Agreement defines the proposed Settlement Class as follows:

> All individuals as to whom, during the period from June 19, 2015 through and
> including December 1, 2016 (for applicants); June 19, 2015 through and including
> September 4, 2017 (for employees subject to Department of Transportation
> background checks); and June 19, 2015 through and including October 2, 2017
> (for all other employees), a consumer report for employment purposes was
> procured by Bottling Group, LLC, Grayhawk Leasing, LLC, or New Bern
> Transport Co.

22.    Bottling Group, LLC, Grayhawk Leasing, LLC, and New Bern Transport Co. sometimes
       are referred to, individually or collectively, as "Pepsi Beverages Company," or "PBC"—
       the defendant named in this Action.

### Benefits to the Settlement Class.

23.    The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff
       and all members of the Settlement Class in exchange for Defendant's agreement to pay
       $1,192,275 to the Common Fund. The gross *pro rata* share for each Class Member is
       $51.54.

24.    The estimated total net settlement class payment if all class members submit a valid
       Claim Form will be approximately $710,850, which will be allocated on a *pro rata* basis.
       The estimated net settlement amount is based on Class Counsel's contingent attorneys'
       fee award of 1/3 of the common fund, totaling an amount not to exceed $397,425 and
       subject to this Court's approval, Class Counsel's costs in prosecuting this matter, which
       will not exceed $20,000, the proposed Class Representative Service Payment to Plaintiff
       for an amount not to exceed $5,000, and an amount not to exceed $59,000 for Settlement
       Administration Costs.

25.    Based upon representations made by the Defendant, the Settlement Class is comprised of approximately 23,133 members, If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and a Class Representative service award, and all Settlement Class Members participate, the parties anticipate that each Settlement Class Member who makes a claim will receive a net payment of at least approximately $30.73.

26.    If the total amount claimed by Settlement Class Members is less than 60% of the Net Settlement Fund, the payments made to the Settlement Class Members will proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms will equal 60% of the Net Settlement Fund. Any amounts of the Net Settlement Fund over the Sixty Percent (60%) minimum that are not claimed by any Class Member by the Response Deadline shall not be paid and shall remain the exclusive property of Defendant.

27.    Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces.

28.    Provided the total uncashed check remainder is at least $20,000 after distributing the Net Settlement Fund and after the initial 90-day period for negotiating checks (which total uncashed first check remainder will be calculated by the Settlement Administrator at least 30 days following the 90-day check expiration date), any uncashed settlement compensation in the Settlement Fund (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis via check at least 60 days following the 90-day first check expiration date as a Second Settlement Payment to those Settlement Class Members who timely negotiated the first checks they received, who shall have ninety (90) days from the date these Second Settlement Payment checks are mailed to negotiate the second checks, after which the checks will expire.

29. Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount and after the second 90-day period for negotiating the second distribution checks will constitute a *cy pres* fund which will be donated to Metropolitan Dallas United Way, subject to Court approval.

### Notice to class members.

30. The Parties have agreed to use American Legal to provide notice and administer the settlement. American Legal has a provided a "not to exceed" cost estimate of $59,000.

31. Not later than fifteen (15) calendar days after the Court has issued the Preliminary Approval Order, PBC shall disclose the names and last known addresses of members of the Settlement Class to the Settlement Administrator. No later than thirty (30) calendar days after receipt of such information, the Settlement Administrator will mail the Notice (Exhibit B to the Settlement Agreement) to all Settlement Class Members via first-class U.S. Mail, postage prepaid and return service requested to such Settlement Class Member's last known mailing address, as updated by using the U.S. Postal Service's database of verifiable mailing addresses (the CASS database) and the National Change-of-Address database. The Notice shall bear the Settlement Administrator's mailing address as the return-mail address. The Notice will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Southern District of New York" and may also include a bar code.

32. The Settlement Administrator shall also make available the Notice to all members of the Settlement Class via a settlement website.

33. For all Notices returned to the Settlement Administrator without forwarding addresses, the Settlement Administrator will use publicly available databases as practicable to update those Settlement Class Members' addresses and will cause the Notice to be re-mailed by the Settlement Administrator to such Settlement Class Members who can be located.

34.     The Settlement Administrator will establish and staff a toll-free telephone line that members of the Settlement Class can use to contact the Settlement Administrator with questions about the settlement or to change their addresses.

35.     A Claim Form (Exhibit A to the Settlement Agreement) will also be included as part of the mailing.

### Claim Form Procedures.

36.     To receive a portion of the Net Settlement Fund, all members of the Settlement Class must submit a timely Claim Form by the Response Deadline (60 days after mailing of the Notice). The Claim Form is designed to confirm the location and correct address of each Settlement Class Member--individuals who submitted online employment applications and background check forms dating back more than three years and, for many, with whom Defendant's only interaction was the submission of the employment application and background check online screens (i.e., they were not hired as employees).  Without this important Claim Form, checks would be distributed to improper addresses and/or individuals and checks almost certainly would be cashed by non-Settlement Class Members.  The date of the postmark on the return mailing envelope or the timestamp on the fax or if submitted electronically through the Claims Administration website, will be the exclusive means to determine whether a Claim Form has been timely submitted. However, it is not the intention of the Parties to exclude Class Members from participating in the Settlement for technical reasons that do not interfere with the orderly administration of the Settlement. Therefore, the Settlement Administrator will compile a list of claims rejected solely for failure to cure an unsigned Claim Form

37.     If the Settlement Class member's Claim Form or Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter ("Cure Letter") within three (3) business days of receiving the defective submission to advise the

Class Member that his or her submission is defective and that the defect must be cured to render the Claim Form or Request for Exclusion valid. The Class Member will have until the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, to postmark, fax, or electronically submit a revised Claim Form or Request for Exclusion. If a Class Member responds to a Cure Letter by filing a still-defective claim, then the Claims Administrator will have no further obligation to give notice of a need to cure. If the revised Claim Form is not postmarked, received by fax, or electronically submitted within the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, it will be deemed untimely.

### Right to Opt Out.

38.    All members of the Settlement Class will have the right to be excluded from, *i.e.*, to "opt out" of, the Settlement Class. On or before the Response Deadline, each member of the Settlement Class who elects to opt out of the settlement must send, by first-class U.S. mail, written notice addressed to the Settlement Administrator indicating his or her name and address and stating that he or she desires to opt-out of the settlement or otherwise does not want to participate in the settlement. Any member of the Settlement Class who does not timely (as measured by the postmark on that individual's written notice) opt out of the settlement by written notice directed to the Settlement Administrator and containing the requisite information shall remain a member of the Settlement Class and shall be bound by any Orders of the Court about the Settlement or the Settlement Class. Any member of the Settlement Class who fails to timely and validly opt out of the Settlement shall be bound by the terms of this Settlement. If more than 2,500 members of the Settlement Class (approximately 11%) validly, timely, and individually opt out of the class, then Defendant may in its sole discretion exercise its right to void the Settlement, in which case this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ante as if they had not entered into this settlement. In

that event, the settlement and all negotiations and proceedings related to the settlement
will be without prejudice of the rights of the Parties, and evidence of the settlement,
negotiations, and proceedings will be inadmissible and will not be discoverable.

### Objections.

39. Any member of the Settlement Class who wishes to object to the settlement must return
to the Settlement Administrator a timely written statement of objection no later than the
Response Deadline. The Notice of Objection must state (1) the case name and number;
(2) the name, address, telephone number, and email address (if any) of the member of the
Settlement Class making the objection; (3) a statement of the objection(s) being asserted;
(4) a detailed description of the facts and any legal authorities underlying each objection;
(5) a notice of intent to appear at the final Fairness Hearing, if the Settlement Class
Member making the objection intends to appear; (6) a list of any witnesses the Settlement
Class Member making the objection may call to testify at the Final Approval Hearing,
whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of
the same, which that such objector may offer at the Final Approval Hearing. Any
objection must be personally signed by the objector.

40. No member of the Settlement Class shall be entitled to contest in any way the approval of
the terms and conditions of this Agreement or the Court's Final Approval Order except
by filing and serving written objections in accordance with the provisions of this
Settlement Agreement. Any member of the Settlement Class who fails to make objections
in the manner specified above shall be deemed to have waived any objections and shall
be foreclosed from making any objections, whether by appeal or otherwise, to the
settlement.

41. The Settlement Administrator shall provide any objections and backup information to
Defendant's Counsel and Class Counsel, who shall file same with the Court at least seven
days before the Final Approval Hearing or as otherwise ordered by the Court.

**Release provisions.**

42.  On the Settlement Effective Date, all members of the Settlement Class who have not timely and properly opted out of the settlement, and all those acting or purporting to act on their behalf including, but not limited to, their successors, assignees, legatees, heirs, and personal representatives, fully and forever release, waive, acquit, and discharge Defendant and the Released Parties to the fullest extent permitted by law from any and all Released Claims.

43.  Released Parties is defined as:

> Grayhawk Leasing, LLC, New Bern Transport Co, and Defendant Bottling Group, LLC (which sometimes are referred to, individually or collectively, as "PBC Beverages Company," or "PBC"), and its and their predecessors, successors, subsidiaries, parents, and assigns, and any and all of their past, present and future directors, officers, trustees, employees, attorneys, agents, servants and representatives, whether in their individual or official capacities.

44.  "Released Claims" is defined as:

> All claims alleged in the Litigation (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§§ 1681b(b)(2)(A)) and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether the factual basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims extends to the limits of the Covered Period.

**Attorneys' Fees and Expenses**

45.  Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees and up to $20,000 for reimbursement of costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees not to oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

**Representative Incentive Payment.**

46.     The Settlement Agreement provides for a Class Representative Service Payment to Plaintiff for an amount not to exceed $5,000, subject to Court approval.

**Class Administration Expenses.**

47.     The Settlement Agreement provides for the payment of $59,000 for Settlement Administration Costs to be provided by American Legal.

**The benefit to the class is adequate and fair.**

48.     In the FCRA context, the gross *pro rata* Settlement Class member recovery of $51.54 and the net pro rata amount of $30.73 if all Settlement Class Members file a valid Claim Form in this Settlement is in line with per-class member settlement amounts in similar cases under the FCRA. (*See, e.g. Ernst v. Dish Network, LLC*, (S.D.N.Y.) 1:12-cv-08794 ($12.74 net to disclosure class members if all made a claim); *Simons v. Aegis Communications Group*, No. 2:14-cv-04012, Order Granting Preliminary Approval (W.D. Mo. Oct. 15, 2014) (ECF No. 29) (preliminarily approving improper disclosure settlement with payment of $35 per class member); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (approving settlement providing for $54 gross amount per class member); *Aceves v. AutoZone*, Case No. 5:14-CV-02032 (C.D. Cal. 2016)  (granting final approval; 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member).)

49.     The Settlement therefore is within the range of other large-scale FCRA class action cases. The Settlement was reached after pre-mediation discovery and an all-day mediation that resulted in a mediator's proposal and subsequent negotiation by the parties. Class Counsel, in weighing the benefits and detriments to the Class, found that there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 to

$1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed.

50.    The settlement amount is appropriate where other district courts have determined that other alleged violations, similar to Defendant's alleged violation, do not constitute "willful violations" as a matter of law and consideration of the risks and costs attendant to an appeal, which, if successful, would still require a trial on the merits.

51.    Under the Parties' Settlement Agreement, the Settlement Class members can quickly realize a significant portion of their possible FCRA claims from the Settlement Fund, even if the amount is slightly less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. That the class members can achieve this recovery without the costs and risk of continued litigation clearly establishes the fairness and adequacy of the settlement as a preliminary matter.

52.    The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

**The parties engaged in arm's length settlement negotiations.**

53.    This action has been vigorously litigated by the parties and sufficient discovery has been obtained by Plaintiff to assess the strengths of their respective claims and defenses. The parties also engaged in a full-day mediation with a respected mediator, which was helpful in resolving the matter.

**The proponents of the settlement are experienced.**

54.     Counsel are experienced in consumer and wage and hour class action litigation and
endorse the settlement as fair and adequate under the circumstances. In counsel's opinion,
there is no obvious deficiency in the class settlement.

**Public policy considerations support preliminary approval.**

55.     This case is brought under the Fair Credit Reporting Act, a statute that recognizes the
importance of allowing the prosecution of cases on behalf of consumers whose rights
have been violated by enacting a fee-shifting provision as part of the statute. The
settlement is consistent with the public interest because it is consistent with the proper
administration of justice and the purpose of the FCRA in ensuring that job applicants
receive a meaningful disclosure and authorization.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Dated: April 23, 2018

Peter R. Dion-Kindem

Exhibit 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Altareek Grice, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>Pepsi Beverages Company, and Does 1 through 10,<br><br>      Defendants. | Case No. 17-CV-8853 (JPO)<br>**CLASS ACTION**<br>Judge J. Paul Oetken<br><br>**STIPULATION RE CLASS ACTION SETTLEMENT** |

**Table of Contents**

I.     RECITALS. ....................................................................................................5

II.    DEFINITIONS. ...............................................................................................6

       1.     Action or Litigation. ...........................................................................6

       2.     Agreement. ...........................................................................................7

       3.     Claim Form. .........................................................................................7

       4.     Class Counsel. ......................................................................................7

       5.     Class Counsel Attorneys' Fees. ...........................................................7

       6.     Class Counsel Costs. ............................................................................7

       7.     Class Representative or Plaintiff. ........................................................7

       8.     Class Representative Service Payment. ...............................................7

       9.     Court. ...................................................................................................7

       10.    Covered Period. ...................................................................................8

       11.    FCRA State/Local Equivalents. ..........................................................8

       12.    Final Approval Hearing. ......................................................................8

       13.    Final Approval Order. ..........................................................................8

       14.    Net Settlement Fund. ...........................................................................8

       15.    Notice. ..................................................................................................9

       16.    Parties. ..................................................................................................9

       17.    Preliminary Approval Order. ...............................................................9

       18.    Released Claims. ..................................................................................9

       19.    Released Parties. ..................................................................................9

       20.    Response Deadline. ............................................................................10

       21.    Second Settlement Payment. ..............................................................10

       22.    Settlement Administrator. ..................................................................10

       23.    Settlement Administration Costs .......................................................10

       24.    Settlement Class. ................................................................................10

       25.    Settlement Class Member. ..................................................................10

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

26.    Settlement Effective Date or Effective Date...................................................11

27.    Settlement Fund. ..............................................................................................11

28.    Settlement Payment. ........................................................................................11

29.    Settlement Second Distribution Total Amount..............................................11

30.    Settlement Website. .........................................................................................12

31.    Website Notice..................................................................................................12

III.    RELIEF AND BENEFITS. ........................................................................................12

32.    Monetary Benefits to Settlement Class Members...........................................12

33.    Cy Pres Fund.....................................................................................................14

34.    Taxes..................................................................................................................14

35.    Class Representative Service Payment. ...........................................................15

36.    Class Counsel Attorneys' Fees and Costs.......................................................15

37.    Payments to the Settlement Administrator .....................................................16

IV.    NOTICE, OPT-OUT, OBJECTIONS AND SETTLEMENT APPROVAL...............16

38.    Notice to Settlement Class Members...............................................................16

39.    Notices Returned as Undeliverable..................................................................17

40.    Toll-Free Telephone Line. ...............................................................................17

41.    Claim Form Procedures. ..................................................................................17

42.    Right to Opt Out................................................................................................18

43.    Objections. ........................................................................................................19

44.    Preliminary Settlement Approval. ...................................................................20

45.    Final Approval Hearing and Final Approval Order and Judgment................20

V.    RELEASE OF CLAIMS...........................................................................................20

46.    Release of Claims by the Class Members........................................................20

47.    Prior Releases and Waivers of Claims.............................................................20

VI.    OTHER PROVISIONS.............................................................................................20

48.    No Admission of Liability. ..............................................................................20

49.    If Settlement Not Approved.............................................................................21

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

50.   Settlement Modification. ................................................................21

51.   Class Certification for Settlement Purposes Only. ...........................22

52.   No Publicity. .................................................................................22

53.   Communications with Settlement Class Members. ..........................23

54.   No Waiver of Privilege. ..................................................................24

55.   Agreement Not Evidence. ...............................................................24

56.   No Waiver of Rights. ......................................................................24

57.   Authority. ......................................................................................25

58.   Best Reasonable Efforts and Mutual Full Cooperation. ...................25

59.   Entire Agreement. ..........................................................................25

60.   Modification. .................................................................................25

61.   Binding. .........................................................................................26

62.   No Prior Assignments. ....................................................................26

63.   Construction. .................................................................................26

64.   Construction of Captions and Interpretations. .................................26

65.   Notices. .........................................................................................26

66.   Counterparts. .................................................................................28

67.   Exhibits. ........................................................................................28

Plaintiff Altareek Grice, individually and on behalf of the putative class, and Defendant Bottling Group, LLC (erroneously sued as Pepsi Beverages Company) ("Pepsi" or "Defendant"), individually and on behalf of other related parties, enter into this Settlement Agreement and Release to settle the issues between them asserted in this action.

## I.   RECITALS.

1.   On June 19, 2017, Plaintiff filed this action, *Altareek Grice v. Pepsi Beverages Company*, in the California Superior Court for the County of San Diego, which Pepsi then removed to United States District Court for the Southern District of California. Pursuant to Pepsi's motion, the case was transferred to the United States District Court for the Southern District of New York.

2.   Plaintiff asserted a cause of action against Pepsi for alleged violations of the Fair Credit Reporting Act ("FCRA") relating to Pepsi's alleged procurement of consumer reports regarding employees or prospective employees without complying with its obligations under the FCRA. Specifically, Plaintiff alleged one claim for relief for Pepsi's alleged violation of 15 U.S.C. Section 1681b(b)(2), alleging that Pepsi procured or caused to be procured a consumer report regarding Plaintiff and that Pepsi violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure."

3.   The Parties have reached a compromise in principle on a class basis, contingent upon the negotiation and execution by the parties of this final agreement approved by the Court.

4.   Pepsi denies it has engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Action, denies that the claim asserted by Plaintiff is suitable for class treatment other than for settlement purposes,

and denies that it has any liability whatsoever, but has agreed to this Settlement Agreement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented, the inconvenience involved, and the disruption to its business operations.

5.       Plaintiff, the Settlement Class, and Class Counsel are aware that Pepsi has significant defenses to the allegations in this Action upon which Pepsi might prevail and that, as a result, Plaintiff and the Settlement Class may not receive any benefit or consideration for the claim that has been asserted against Pepsi.

6.       Based upon their analysis and evaluation of several factors, Class Counsel recognize the substantial risks of continued litigation and delays, including the likelihood that the claims, if not settled now, might not result in any recovery whatsoever for the Settlement Class.

7.       Class Counsel have conducted a thorough study and investigation of the law and facts relating to the claim that has been asserted as well as a thorough study and investigation of the scope and identity of the Settlement Class, and have concluded, considering the benefits of this settlement, as defined below, and the risks and delays of further litigation, that this settlement is fair and reasonable and in the best interests of the Settlement Class.

8.       Subject to the approval of the Court, the Parties wish to settle this Action, effect a compromise, and settle the claims asserted in the Action against Released Parties.

9.       The Parties therefore agree that the claims referenced herein shall be settled, compromised, and released, subject to the approval of the Court, upon and subject to the following terms and conditions:

**II.      DEFINITIONS**

**1.      Action or Litigation.**

The above-entitled action, Case No. 17-CV-8853 (JPO).

**2.     Agreement.**

This Stipulation re Class Action Settlement.

**3.     Claim Form.**

The document substantially in the form attached as Exhibit A that will be mailed to Class

Members' last known addresses and must be signed and returned, or properly submitted online,

by the Response Date for the Class Member to receive his or her share of the Net Settlement

Fund.

**4.     Class Counsel.**

Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C., Lonnie C. Blanchard, III of The

Blanchard Law Group APC, Brandon J. Hill of Wenzel Fenton Cabassa, P.A., and Marc

Edelman of Morgan & Morgan.

**5.     Class Counsel Attorneys' Fees.**

The sum equivalent to 33-1/3% of the Settlement Fund, which will be paid from the

Settlement Fund and which Pepsi has agreed not to oppose, subject to Court approval.

**6.     Class Counsel Costs.**

A sum not to exceed $20,000 in costs incurred by Class Counsel in connection with the

Action and this settlement, which sum shall be paid from the Settlement Fund, subject to Court

approval.

**7.     Class Representative or Plaintiff.**

Plaintiff Altareek Grice.

**8.     Class Representative Service Payment.**

A sum not to exceed $5,000 payable to Plaintiff as consideration for his service as the

named class representative, which sum shall be paid from the Settlement Fund, subject to Court

approval.

**9.     Court.**

The United States District Court for the Southern District of New York.

**10.    Covered Period.**

The period from June 19, 2015 through (and including) December 1, 2016 for applicants; June 19, 2015 through (and including) September 4, 2017 for employees subject to DOT background checks; and June 19, 2015 through (and including) October 2, 2017 for all other employees.

**11.    FCRA State/Local Equivalents.**

Any statute or regulation of any state, U.S. territory, locality/municipality, the District of Columbia, or Puerto Rico, that has a similar purpose or effect as the federal Fair Credit Reporting Act, including regulating the collection or reporting of background checks/consumer information and related actions.

**12.    Final Approval Hearing.**

The Court's hearing following the Settlement Administrator's work to locate and send Notices to all Settlement Class Members, determine the amount payable to each Settlement Class Member, and perform other settlement-related administrative tasks, to approve final administration and payment of the settlement.

**13.    Final Approval Order.**

The Court's Order granting final approval of this settlement.

**14.    Net Settlement Fund.**

The amount of money remaining after the Settlement Fund is reduced by the following amounts:

      a.    Class Representative Service Payment approved by the Court;

      b.    Class Counsel Attorneys' Fees approved by the Court;

      c.    Class Counsel Costs approved by the Court; and

      d.    Settlement Administration Costs approved by the Court, including an amount (also subject to Court approval) reserved to complete the

administration of the settlement after the initial Settlement Payment
checks are distributed.

**15.    Notice.**

The notice attached hereto as Exhibit B, subject to Court approval, and which the

Settlement Administrator will mail, via first-class U.S. mail, to each Settlement Class Member to

explain the terms of the settlement, including the procedure for objecting to or opting out of the

settlement.

**16.    Parties.**

Plaintiff and Defendant.

**17.    Preliminary Approval Order.**

The Court's Order granting preliminary approval of this Settlement.

**18.    Released Claims.**

All claims alleged in the Litigation (including Plaintiff's Complaint) and any known or

unknown claims that were or could have been alleged based on the specific facts and/or legal

theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones

under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§§ 1681b(b)(2)(A))

and any FCRA State/Local Equivalents, including but not limited to background check or

consumer report disclosure notices and forms, the procurement and use of any background check

or consumer reports (including but not limited to any claims under California Business &

Professions Code section 17200), whether such factual basis is known or unknown at the time

the release is approved by the Court.  The period of the Released Claims extends to the limits of

the Covered Period.

**19.    Released Parties.**

Grayhawk Leasing, LLC, New Bern Transport Co., and Defendant Bottling Group, LLC

(which sometimes are referred to, individually or collectively, as "Pepsi Beverages Company,"

or "PBC"), and its and their predecessors, successors, subsidiaries, parents, and assigns, and any and all of their past, present and future directors, officers, trustees, employees, attorneys, agents, servants and representatives, whether in their individual or official capacities.

20.     **Response Deadline.**

Sixty (60) days after the date the Settlement Administrator mails the Notice to Settlement Class Members, by which Response Deadline the members of the Settlement Class must postmark a written claim, a written notice of their intent to opt-out of the settlement, and/or a written notice of objection to the preliminarily approved settlement, as applicable.

21.     **Second Settlement Payment.**

"Second Settlement Payment" means the individualized payment that may be made in the second distribution from the Settlement Fund to the Settlement Class Members who (a) do not timely and validly opt out of the settlement, and (b) timely negotiated the first Settlement Payment checks they received.

22.     **Settlement Administrator.**

The settlement administrator will be American Legal ("Settlement Administrator").

23.     **Settlement Administration Costs**

The costs incurred by the Settlement Administrator in administering the settlement, which the Settlement Administrator has agreed shall not exceed $59,000.

24.     **Settlement Class.**

All individuals as to whom, during the Covered Period, a consumer report for employment purposes was procured by PBC. PBC represents that there are approximately 23,133 members of the Settlement Class.

25.     **Settlement Class Member.**

Any individual who is a member of the Settlement Class who is not validly excluded from the Settlement Class and who timely submits a proper Claim Form.

26.    **Settlement Effective Date or Effective Date.**

The fifth business day after all the following have occurred:

      a.    All parties, Class Counsel, and Defendant's counsel have executed this Agreement;

      b.    The Court has entered without material change the Final Approval Order and Judgment; and

      c.    The final disposition of any related appeals, and in the case of no appeal or review being filed, the expiration of the applicable appellate period.

The Parties intend that the settlement shall not become effective until the Court's Final Approval Order has become completely final and until there is no timely recourse by an appellant or objector who seeks to contest the settlement.

27.    **Settlement Fund.**

The sum of $ 1,192,275 ($51.54 per each of the approximately 23,133 individuals that PBC has indicated are members of the Settlement Class). The Settlement Fund includes the Class Representative Service Payment, Class Counsel Attorneys' Fees, Class Counsel Costs, and Settlement Administration Costs in connection with this Settlement.

28.    **Settlement Payment.**

"Settlement Payment" means the individualized payment that will be made in the first distribution from the Settlement Fund to the Settlement Class Members who do not timely and validly opt out of the settlement after the payment of Class Counsel Attorneys' Fees, Class Counsel Costs, the Class Representative Service Payment, and Settlement Administration Costs.

29.    **Settlement Second Distribution Total Amount**

"Settlement Second Distribution Total Amount" means the amount of uncashed settlement compensation after the expiration of the 90-day period for negotiating checks used to

distribute the Net Settlement Fund, which is to be pooled and distributed on a pro-rata basis among those Settlement Class Members who timely negotiated the first checks they received.

**30.     Settlement Website.**

The website established by the Settlement Administrator to aid in the administration of the settlement.

**31.     Website Notice.**

The notice attached hereto as Exhibit B, subject to Court approval, and which the Settlement Administrator will post on the Settlement Website to explain the terms of the settlement, including the procedure for objecting to or opting out of the settlement.

## III.     RELIEF AND BENEFITS.

**32.     Monetary Benefits to Settlement Class Members.**

In exchange for the releases and waivers of claims described below, PBC will pay the amount of the Settlement Fund in settlement of all claims asserted against it in this Action, from which Settlement Fund the Settlement Class Members will be paid and the Court-approved Class Counsel Attorneys' Fees, Class Counsel Costs, Class Representative Service Payment, and Settlement Administration Costs will be paid.  Defendant will deposit at least 60% of the full Settlement Fund with the Settlement Administrator within 15 days after the Final Approval Order.

The Net Settlement Fund will be distributed to the Settlement Class Members on a pro rata basis as follows, using the timeline set forth in Section IV (below):

a.     If the total amount claimed by Settlement Class Members is less than Sixty Percent (60%) of the Net Settlement Fund, the payments made to the Settlement Class Members will proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms will equal Sixty Percent (60%) of the Net Settlement Fund.

Stipulation re Class Action Settlement

12

b.   Any amounts of the Net Settlement Fund over the Sixty Percent (60%) minimum that are not claimed by any Class Member by the Response Deadline shall not be paid and shall remain the exclusive property of Defendant.

c.   Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. The Settlement Administrator will include with each check an Internal Revenue Service (IRS) Form 1099 for Plaintiff or any Settlement Class Member for whom a form is required. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces. If any such payment is returned by the U.S. Postal Service as undeliverable, or is uncashed or not negotiated before it expires, neither Defendant nor the Settlement Administrator nor Class Counsel shall have any further obligations to Plaintiff or any Settlement Class Member, except that:

    i.    For any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will re-mail the check to the forwarding address;

    ii.   If a Settlement Class Member contacts the Settlement Administrator or Class Counsel to request a replacement check before the initial check is negotiated, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check, but the replacement check shall expire on the same date as the original check; and

d.      The parties agree that all Settlement Class Members waive and abandon any ownership interest in any such undeliverable, returned, uncashed, or non-negotiated checks and further agree that no obligation has been generated or proven with respect to such undeliverable, returned, uncashed, or non-negotiated checks.

e.      Provided the total uncashed check remainder is at least $20,000 after distributing the Net Settlement Fund and after the initial 90-day period for negotiating checks (which total uncashed first check remainder will be calculated by the Settlement Administrator at least 30 days following the 90-day check expiration date), any uncashed settlement compensation in the Settlement Fund (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis via check at least 60 days following the 90-day first check expiration date as a Second Settlement Payment to those Settlement Class Members who timely negotiated the first checks they received, who shall have ninety (90) days from the date the Second Settlement Payment checks are mailed to negotiate the second checks, after which the checks will expire.

33.     *Cy Pres* **Fund.**

Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount and after the second 90-day period for negotiating the second distribution checks will constitute a *cy pres* fund which will be donated to Metropolitan Dallas United Way, subject to Court approval.

34.     **Taxes.**

The Parties agree the payments to each Settlement Class Member are not wages, that each Settlement Class Member will be solely responsible for correctly characterizing this payment for tax purposes and for paying any taxes owed on this payment, and that the Settlement

Administrator on Defendant's behalf will issue to each Settlement Class Member an IRS Form 1099 for this payment as necessary. The Parties also agree that the approved Class Representative Service Payment to Plaintiff is not wages, Plaintiff will be solely responsible for correctly characterizing this payment for tax purposes and for paying any taxes owed on this payment, and that the Settlement Administrator on Defendant's behalf will issue to Plaintiff an IRS Form 1099 for this payment.

   **35.   Class Representative Service Payment.**

Defendant agrees that Plaintiff may apply to the Court for a Class Representative Service Payment in an amount not to exceed $5,000. Plaintiff will file his request for approval of Class Representative Service Payment no later than seven (7) days before the hearing on the Motion for Final Approval. Defendant agrees not to oppose the motion for such service payment.

The Settlement Administrator shall pay any approved Class Representative Service Payment no later than 10 business days after the Effective Date.

   **36.   Class Counsel Attorneys' Fees and Costs.**

Defendant agrees that Class Counsel may apply to the Court for attorney's fees of one-third of the Settlement Fund as reasonable attorneys' fees incurred in prosecuting this Action and in connection with obtaining the approval of this Settlement. Defendant agrees not to oppose an application for fees consistent with this limitation.  Class Counsel agrees that they will accept a lesser amount in fees if the Court rejects Class Counsel's application for one-third of the Settlement Fund and will accept that amount deemed reasonable by the Court.

Class Counsel shall make application to the Court for approval of reimbursement of costs in an amount which is not anticipated to exceed $20,000, which costs shall include costs incurred in connection with the approval of the settlement and the administration of the settlement by Class Counsel, which shall be paid from the Settlement Fund.

Class Counsel will file the application for approval of Class Counsel Attorneys' Fees and Class Counsel Costs no later than seven (7) days before the hearing on the Motion for Final Approval.

The Settlement Administrator shall pay any approved Class Counsel Attorneys' Fees and Class Counsel Costs no later than 10 business days after the Effective Date as directed by Class Counsel in accord with the Final Approval Order.

**37.    Payments to the Settlement Administrator**

The Settlement Administrator shall pay any approved Settlement Administration Costs no later than 10 business days after the Effective Date.

**IV.    NOTICE, OPT-OUT, OBJECTIONS AND SETTLEMENT APPROVAL**

**38.    Notice to Settlement Class Members.**

Not later than fifteen (15) calendar days after the Court has issued the Preliminary Approval Order, PBC shall disclose the names and last known addresses of members of the Settlement Class to the Settlement Administrator.

No later than thirty (30) calendar days after receipt of such information, the Settlement Administrator will mail the Notice (attached as Exhibit B) to all Settlement Class Members via first-class U.S. Mail, postage prepaid and return service requested to such Settlement Class Member's last known mailing address, as updated by using the U.S. Postal Service's database of verifiable mailing addresses (the CASS database) and the National Change-of-Address database. The Notice shall bear the Settlement Administrator's mailing address as the return-mail address. The Notice will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Southern District of New York" and may also include a bar code.

A Claim Form (Exhibit A) will also be included as part of the mailing.

The Settlement Administrator shall also make available the Notice reflected in Exhibit B to all members of the Settlement Class via the Settlement Website.

**39.     Notices Returned as Undeliverable.**

For all Notices returned to the Settlement Administrator without forwarding addresses, the Settlement Administrator will use publicly available databases as practicable to update those Settlement Class Members' addresses and will cause the Notice to be re-mailed by the Settlement Administrator to such Settlement Class Members who can be located.

**40.     Toll-Free Telephone Line.**

The Settlement Administrator will establish and staff a toll-free telephone line that members of the Settlement Class can use to contact the Settlement Administrator with questions about the settlement or to change their addresses.

**41.     Claim Form Procedures.**

To receive a portion of the Net Settlement Fund, all members of the Settlement Class must submit a timely Claim Form by the Response Deadline. The date of the postmark on the return mailing envelope or the timestamp on the fax or if submitted electronically through the Claims Administration website, will be the exclusive means to determine whether a Claim Form has been timely submitted. However, it is not the intention of the Parties to exclude Class Members from participating in the Settlement for technical reasons that do not interfere with the orderly administration of the Settlement. Therefore, the Settlement Administrator will compile a list of claims rejected for failure to cure an unsigned Claim Form

If the Settlement Class member's Claim Form or Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter ("Cure Letter") within three (3) business days of receiving the defective submission to advise the Class Member

that his or her submission is defective and that the defect must be cured to render the Claim Form or Request for Exclusion valid. The Class Member will have until the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, to postmark, fax, or electronically submit a revised Claim Form or Request for Exclusion. If a Class Member responds to a Cure Letter by filing a defective claim, then the Claims Administrator will have no further obligation to give notice of a need to cure. If the revised Claim Form is not postmarked, received by fax, or electronically submitted within the later of (a) the Response Deadline or (b) fifteen (15) calendar days from the date of the cure letter, it will be deemed untimely.

     **42.    Right to Opt Out.**

     All members of the Settlement Class will have the right to be excluded from, *i.e.*, to "opt out" of, the Settlement Class. On or before the Response Deadline, each member of the Settlement Class who elects to opt out of the settlement must send, by first-class U.S. mail, written notice addressed to the Settlement Administrator indicating his or her name and address and stating that he or she desires to opt-out of the settlement or otherwise does not want to participate in the settlement. Any member of the Settlement Class who does not timely (as measured by the postmark on that individual's written notice) opt out of the settlement by written notice directed to the Settlement Administrator and containing the requisite information shall remain a member of the Settlement Class and shall bound by any Orders of the Court about the Settlement or the Settlement Class. Any member of the Settlement Class who fails to timely and validly opt out of the Settlement shall be bound by the terms of this Settlement. If more than 2,500 members of the Settlement Class (approximately 15%) validly, timely, and individually opt out of the class, then Defendant may in its sole discretion exercise its right to void the Settlement, in which case this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ante as if they had not entered into this settlement. In

that event, the settlement and all negotiations and proceedings related to the settlement will be without prejudice of the rights of the Parties, and evidence of the settlement, negotiations, and proceedings will be inadmissible and will not be discoverable.

**43.    Objections.**

Any member of the Settlement Class who wishes to object to the settlement must return to the Settlement Administrator a timely written statement of objection no later than the Response Deadline. The Notice of Objection must state (1) the case name and number; (2) the name, address, telephone number, and email address (if any) of the member of the Settlement Class making the objection; (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the final Fairness Hearing, if the Settlement Class Member making the objection intends to appear; (6) a list of any witnesses the Settlement Class Member making the objection may call to testify at the Final Approval Hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which that such objector may offer at the Final Approval Hearing. Any objection must be personally signed by the objector.

No member of the Settlement Class shall be entitled to contest in any way the approval of the terms and conditions of this Agreement or the Court's Final Approval Order except by filing and serving written objections in accordance with the provisions of this Settlement Agreement. Any member of the Settlement Class who fails to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections, whether by appeal or otherwise, to the settlement.

The Settlement Administrator shall provide any objections and backup information to Defendant's Counsel and Class Counsel, who shall file same with the Court at least seven days before the Final Approval Hearing or as otherwise ordered by the Court.

44.    **Preliminary Settlement Approval.**

As soon as practicable after the Parties execute this Agreement, Class Counsel will

present this Agreement to the Court for preliminary settlement approval and will request by

unopposed motion that the Court enter a Preliminary Approval Order.

45.    **Final Approval Hearing and Final Approval Order and Judgment.**

The Parties agree to cooperate to work to schedule a Final Approval Hearing as soon as

practicable.

## V.    RELEASE OF CLAIMS.

46.    **Release of Claims by the Class Members**

On the Settlement Effective Date, all members of the Settlement Class who have not

timely and properly opted out of the settlement, and all those acting or purporting to act on their

behalf including, but not limited to, their successors, assigns, legatees, heirs, and personal

representatives, fully and forever release, waive, acquit, and discharge Defendant and the

Released Parties to the fullest extent permitted by law from any and all Released Claims.

47.    **Prior Releases and Waivers of Claims**

Defendant agrees that the Settlement Class Members' or Plaintiff's receipt of funds under

this Agreement is not a violation of any prior promises, contracts, agreements, waivers or

covenants between Defendant and the Settlement Class Members or Plaintiff.

## VI.    OTHER PROVISIONS.

48.    **No Admission of Liability.**

The Parties acknowledge and agree that neither the fact of, nor any provision contained

in, this Agreement, nor the implementing documents or actions taken under them, nor

Defendant's willingness to enter into this Agreement, nor the content or fact of any negotiations,

communications, and discussions associated with the settlement shall constitute or be construed

as an admission by or against Defendant or any of the Released Parties of any fault, wrongdoing,

violation of law, or liability whatsoever, the validity of any claim or fact alleged in this Action, or any infirmity of any defenses asserted by Defendant in this Action.

**49.    If Settlement Not Approved.**

If any court disapproves or sets aside the Parties' Settlement or this Agreement or any material part of either for any reason or refuses to enter or give effect to the Final Approval Order or holds that any terms of the Settlement or this Agreement or any of the attached exhibits should be modified in any material way, then the Parties may either jointly agree to accept the Settlement or this Agreement as judicially modified or, if they do not agree, either Party may appeal that ruling to the extent possible, or, in the alternative, terminate the Agreement. If the Agreement is terminated pursuant to this provision, or if an appeal is filed and if the Settlement, this Agreement, or the Final Approval Order or its equivalent in all material respects are not in effect after the termination of all proceedings arising out of that appeal, then unless the Parties jointly agree otherwise, this Agreement shall become null and void, the Parties will return to the status quo ante, the Settlement Fund amount shall be returned to PBC, and the Parties will jointly request that the Action proceed. The amount of the Settlement Fund is agreed by the Parties to be a material term of this Agreement.

**50.    Settlement Modification.**

The Parties may agree by stipulation executed by counsel to modify the exhibits to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court about the contents of such exhibits without the need to further amend this Agreement. A stipulation modifying the settlement will be filed with the Court and subject to the Court's approval.

**51.     Class Certification for Settlement Purposes Only.**

The Parties' settlement and this Agreement are contingent upon the Court's certifying a class for settlement purposes only based upon the class definition set forth in this Agreement, If the Court does not so certify a class, this Agreement will have no effect and will be null and void. Class certification will in all instances be based on Defendant's waiver of certification arguments, but only for purposes of settlement, that may exist to defeat class certification and shall not be construed as an admission by Defendant as to the suitability of class treatment. Specifically, Defendant denies that a class may be properly certified other than for purposes of this Settlement and reserves its rights to continue to contest any existing or prospective class-certification motion, and nothing in this Agreement shall be construed as an admission by Defendant or any of the Released Parties that this Action or any similar case is amenable to class certification. Furthermore, nothing in this Agreement shall prevent Defendant from seeking decertification of a certified class if the Court does not issue a Final Approval Order or if that Order is not upheld on appeal. In addition, the Parties agree that if, for any reason, the settlement is not approved, the settlement class shall be decertified and that certification or denial of certification shall not be used by any person, a Party, or the Court as a basis for certifying or denying certification of any class for litigation purposes.

**52.     No Publicity.**

Class Representative and Class Counsel agree not to disclose or publicize the disposition of this Action, including the fact of the settlement, its terms or contents, and the negotiations underlying the settlement, in any manner or form, directly or indirectly, to any person or entity, except Class Members and as shall be contractually required to effectuate the terms of the settlement as set forth herein.  For the avoidance of doubt, this section means Class Representative and Class Counsel agree not to issue press releases or website postings,

communicate with, or respond to any media or publication entities, publish information in

manner or form, whether printed or electronic, on any medium or otherwise communicate,

whether by print, video, recording or any other medium, with any person or entity concerning the

settlement, including the fact of the settlement, its terms or contents and the negotiations

underlying the settlement, except as shall be contractually required to effectuate the terms of the

settlement as set forth herein.  However, for the limited purpose of allowing Class Counsel to

prove adequacy as class counsel in other actions, Class Counsel may disclose the name of the

Parties in this action and the venue/case number of this action (but not any other settlement

details) for such purposes.  In addition, in response to inquiries from third parties, the Parties and

their counsel may respond as follows:  "The parties reached an amicable resolution" and may

refer the inquirer to the public records of this action on file with the Court.  The Parties may also

discuss the terms of the settlement with members of the Settlement Class.  The exceptions to the

publicity provision outlined herein are to be strictly construed and do not authorize any

disclosures other than those specifically identified.  Except to the extent required for Court

approval, and except that PBC may disclose such information to its/their employees, counsel,

advisors, shareholders and company representatives who PBC believes have a need to know the

specific terms of the settlement, the Parties agree to maintain confidentiality as to the specific

terms of the settlement until such times as it is submitted to the court for approval.

   **53.    Communications with Settlement Class Members.**

   The Parties agree that Class Counsel may communicate directly with members of the

Settlement Class to ensure as much participation in the settlement as possible.  Communication

with Settlement Class members shall not be used to subvert the strong confidentiality provisions

set forth in the "No Publicity" section above.

**54.     No Waiver of Privilege.**

Nothing in this Agreement is intended to limit or waive the confidentiality of attorney-client privileged communications between Class Counsel and their current clients and members of the Settlement Class, nor is anything in this Agreement intended to limit the ability of Class Counsel to make truthful representations to judicial authorities about either its appointment as class counsel or the settlement of this Action. Likewise, nothing in this Agreement is intended to limit Defendant's or its agents' communications with their counsel or their ability to respond to judicial or other government authorities.

**55.     Agreement Not Evidence.**

Neither this Agreement nor any related documents, negotiations, statements, or Court proceedings may be construed as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Defendant and the Released Parties, or as a waiver by Defendant of any applicable defense to the merits of the claims asserted or to Plaintiff's ability to maintain this Action as a class action, except that this Agreement is admissible at hearings necessary to obtain and implement Court approval of the Parties' settlement or in hearings to enforce the terms of this Agreement or any related order of the Court.

**56.     No Waiver of Rights.**

A Party's failure to exercise any rights under this Agreement shall not constitute waiver of that Party's right to exercise those rights later, except as expressly provided in this Agreement. No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as

expressly provided. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.

### 57.    Authority.

The signatories below represent they are fully authorized to enter into this Agreement.

### 58.    Best Reasonable Efforts and Mutual Full Cooperation.

The Parties agree to fully cooperate with one other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other actions as may be reasonably necessary to implement the terms of this Agreement, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, or otherwise, to ensure that checks are mailed to Settlement Class Members as soon as practicable under the terms of this Agreement. As soon as practicable after execution of this Agreement, Class Counsel will, with the assistance and cooperation of Defendant and its counsel, take all necessary steps reasonably necessary to secure the Court's preliminary and final approval of the Parties' settlement.

### 59.    Entire Agreement.

This Agreement, with its exhibits, constitutes the full and entire agreement among the Parties concerning the subject matter and supersedes all prior representations, agreements, promises, or warranties, written, oral, or otherwise. No Party shall be liable or bound to any other Party for any prior representation, agreement, promise, or warranty, oral or otherwise, except for those that are expressly set forth in or attached to this Agreement.

### 60.    Modification.

This Agreement may not be changed, altered, or modified except in a writing signed by the Parties. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

61. **Binding.**

This Agreement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

62. **No Prior Assignments.**

The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights that are released or discharged in this settlement.

63. **Construction.**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the Parties and that this Agreement will not be construed in favor of or against any Party because of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

64. **Construction of Captions and Interpretations.**

Paragraph titles, captions, or headings in this Agreement are inserted as a matter of convenience and for reference and do not define, limit, extend, or describe the scope of this Agreement or any provision in it. Each term of this Agreement is contractual and is not merely a recital.

65. **Notices.**

Unless otherwise specifically provided in this Agreement, any notices, demands or other communications required hereunder or after entry of the Court's Final Approval Order and Judgment shall be in writing and addressed as follows:

**If to Plaintiff:**

THE DION-KINDEM LAW FIRM
Peter R. Dion-Kindem, P.C.
peter@dion-kindemlaw.com

21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone: (818) 883-4900
Facsimile: (818) 883-4902

and

THE BLANCHARD LAW GROUP, APC
Lonnie C. Blanchard, III
lonnieblanchard@gmail.com
3311 East Pico Boulevard
Los Angeles, California 90023
Telephone: (213) 599-8255
Facsimile: (213) 402-3949

and

Brandon J. Hill
bhill@wfclaw.com
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602

**If to Defendant:**

Stephen R. Woods
Stephen.Woods@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The Ogletree Building
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864.271.1300
Facsimile: 864.235.8806

Aaron J. Warshaw
Aaron.Warshaw@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, NY 10019
Telephone: 212.492.2500
Facsimile: 212.492.2501

If mailed, notice will be deemed given as of the third business day after mailing. If sent sent by overnight delivery or delivered person, notice will be deemed given on the date of delivery.

The Parties agree that, because the Settlement Class Members are so numerous, it is impossible and impracticable to have each Settlement Class Member execute this Agreement. Therefore, the Notice will advise all Settlement Class Members of the binding nature of the release and will have the same force and effect as if this Agreement were executed by each Settlement Class Member to the extent applicable law so provides.

**66.    Counterparts.**

The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and, when taken together with the other executed counterpart, shall constitute one agreement, which shall be binding upon and effective as to all Parties. The delivery of the executed Agreement may be accomplished via facsimile or electronic mail (in Portable Document Format ["PDF"]). The signature transmitted via facsimile or electronic mail (in PDF) shall have the same force and effect as if an original.

**67.    Exhibits.**

A – Claim Form

Proposed Preliminary Approval Order

B – Proposed Notice

*Signatures on following page.*

Executed as of _____

Aida Babalola
On behalf of Bottling Group, LLC and
Released Parties

Executed as of 4/23/2018

Altareek Grice, Plaintiff

Agreed as to Form:

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: _____
Stephen R. Woods
Attorneys for Defendant
Bottling Group LLC

Agreed as to Form:

THE DION-KINDEM LAW FIRM

By: _____
PETER R. DION-KINDEM, P.C.
PETER R. DION-KINDEM
Attorney for Plaintiff
Altareek Grice

33017765.18

Exhibit A

*Grice v. Grayhawk Leasing, LLC, New Bern Transport Co., and/or Bottling Group, LLC ((individually and collectively, "Pepsi Beverages Company" or "PBC")*

c/o _____

_____
_____

## CLAIM FORM

Provide any address updates below:

BARCODE
CLASS MEMBER NAME(S)
ADDR1
ADDR2
CITY STATE ZIP CODE

TELEPHONE NUMBER

_____
_____
_____
_____
_____
_____

A settlement was reached in the case of *Altareek Grice v. Pepsi Beverages Company, United States District Court, Southern District of New York,* Case No. 01-15-0002-7497. You are a class member and are entitled to receive a portion of the settlement. **YOUR ESTIMATED SHARE OF THE SETTLEMENT IS $30.73, if all Settlement Class members timely submit valid claim forms.** Your actual share may be larger depending on the number of claim forms submitted.

### Instructions to Receive Payment – Read and Follow all Instructions:

**Make sure the address listed above is the correct address--where you want your check mailed. Make any changes to your address in the space provided next to the mailing address above.** It is very important we confirm your correct mailing address, to ensure Class Members receive their respective settlement payment check.

Enter the information requested in the enclosed Substitute Form W-9 (if applicable) and sign and date this Claim Form. **This Claim Form must be signed and dated to receive payment.**

Return this Claim Form in the enclosed envelope, postmarked no later than _____, [60 calendar days after mailing - to be filled in by Settlement Administrator based on actual mailing date of Notice] or otherwise deliver it to the Settlement Administrator by _____ [to be filled in by Settlement Administrator based on actual mailing date of Notice] at:

*Altareek Grice v. Pepsi Beverages Company Settlement Administrator*
c/o _____
_____
_____

You may also submit a claim online at www.beverages.com on or before _____ **[to be filled in by Settlement Administrator based on actual mailing date of Notice].**

If your completed Claim Form is lost in the mail or for any reason is not received at the above address, your Claim will be not considered for payment unless you have a U.S. Mail return receipt showing that the Claim Form was received at the above address or equivalent proof of timely delivery.

Any Claim Form (1) not postmarked by _____; (2) not signed by you under penalty of perjury; and/or (3) that does not otherwise comply with the claims process is not considered a valid Claim Form. Any Claim Form that is not considered timely and valid will not be paid but you will still be bound by the Release set forth in the Joint Stipulation.

You may contact the Settlement Administrator to inquire how your estimated share of the settlement amount was calculated. The Settlement Administrator can be reached at:

*Altareek Grice v. Pepsi Beverages Company Settlement Administrator*
*c/o*

_____

_____

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Signature: _____   Date: (mm/dd/yyyy): _____

**You must sign and date this Claim Form and return it to the Claims Administrator, postmarked by _____ to receive payment.**

33527728.8

# Exhibit B

**COURT APPROVED SETTLEMENT NOTICE AUTHORIZED BY THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**If Bottling Group, LLC, Grayhawk Leasing, LLC, or New Bern Transport Co  (individually
and collectively, "Pepsi Beverages Company" or "PBC") had a background check run on you
from June 19, 2015 through December 1, 2016 (for applicants); from June 19, 2015 through
September 4, 2017 (employees subject to DOT background checks); and from June 19, 2015
through October 2, 2017 (for all other employees), you could get a payment from a class action
settlement.**

The United States District Court, Southern District of New York authorized this notice.   This is not a
solicitation from a lawyer.

- This Notice relates to a proposed settlement in a class action lawsuit which alleges that the PBC
  violated the Fair Credit Reporting Act ("FCRA")  by procuring or causing to be procured background
  reports for employment purposes without properly making legally required disclosures in advance.
  PBC denies that it violated the law in any way, but the parties have agreed to resolve the lawsuit by a
  proposed settlement.

- Your legal rights are affected whether you act or don't act.   Read this notice carefully.

- A former employee of PBC has sued PBC claiming that PBC violated federal law regarding PBC's
  procurement of background checks for employment purposes.

- PBC has denied these claims. The Court has not decided the merits of these claims.

- To avoid litigation expenses, PBC has agreed to class settlement of these claims. This Notice explains
  your rights under this settlement.

- **The expected average recovery for those class members who had a background check run as
  described above is at least $30.73.**

- Your legal rights are affected by this Settlement and you have a choice to make now:

| | |
|---|---|
| **FILE A CLAIM** | **File a Claim Form, get money and release rights.**<br><br>By _____, [to be filled in by Class Administrator based on actual mailing date of Notice], you must return the Claim Form attached to this Class Notice to receive your portion of the Settlement.<br><br>**Your estimated portion of the settlement, assuming all Class Members make a claim, is $29.44.**<br><br>If you file a claim, you give up your right to sue PBC for the claims released by this Settlement. |

1

| **Do Nothing** | If you do nothing and the Court orders final approval of the Settlement, you will not receive any money and you will also give up your rights to file your own lawsuit for claims released by this Settlement. |
| **Ask to be Excluded by [Date]** | **Removes you from the Class, you receive no settlement money, and you retain your rights.**<br><br>**If you ask to be excluded from the Settlement, you will get no payment, but you will keep your rights to sue PBC separately for the same legal claims in this lawsuit.** |
| **Object by [Date]** | Write to the Court about why you don't like the Settlement. |
| **Go to a Hearing on [Date]** | Ask to speak in Court about the fairness of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- Any questions? Read on.

BASIC INFORMATION ............................................................................ 2

THE CLAIMS IN THE LAWSUIT ........................................................ 3

THE SETTLEMENT BENEFITS—WHAT YOU GET ........................... 4

YOUR RIGHTS AND OPTIONS ............................................................ 5

THE LAWYERS REPRESENTING YOU ............................................. 6

OBJECTING TO THE SETTLEMENT ................................................. 6

FINAL APPROVAL OF THE SETTLEMENT ...................................... 7

GETTING MORE INFORMATION ...................................................... 7

## BASIC INFORMATION

You are receiving this Class Notice because PBC's records indicate that you are a Class Member. The purpose of this Class Notice is to describe the litigation to you, inform you about the Settlement, and inform you of your rights and options regarding the Settlement.

This lawsuit is about whether PBC violated the Fair Credit Reporting by procuring or causing to be procured background checks on employees and job applicants without providing a "stand alone" disclosure informing them that a background check would be procured.

2

PBC disputes Plaintiff's allegations and denies all liability to Plaintiff and the Settlement Class. No court has found PBC to have violated the law in any way. No court has found that Plaintiff could recover any certain amount in this litigation.

Although the Court has authorized Notice to be given of the proposed settlement, this Notice does not express the opinion of the Court on the merits of the claims or defenses asserted by either side in the lawsuit. The Settlement is not yet final.

In a class action, a person called a "Class Representative" (in this case Altareek Grice) sues on behalf of himself and other people who have similar claims. These people together are a "Class" or "Class Members." The person who has sued—and all the Class Members like them—are called the Plaintiffs. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

The Court has decided that this lawsuit can be settled on a class-wide basis because it meets the requirements of federal law governing class actions.

Specifically, the Court has found that:

- There are approximately 23,133 class members whose rights may have been violated.

- There are legal questions and facts that are common to each of them;

- Altareek Grice's claims are typical of the claims of the rest of the Class;

- Altareek Grice's and the lawyers representing the Class will fairly and adequately represent the Class members' interests;

- The common legal questions and facts are more important than questions that affect only individuals; and

- This class action will be more efficient than having many individual lawsuits.

## THE CLAIMS IN THE LAWSUIT

The complaint alleged that PBC violated the Fair Credit Reporting Act ("FCRA") by procuring or causing to be procured background reports for employment purposes without properly making legally required, stand-alone disclosures in advance.

The complaint seeks various remedies, including statutory damages, attorneys' fees and costs, prejudgment interest, punitive damages and other relief as may be deemed proper.

PBC denies that it did anything wrong and claims that it has no liability whatsoever to the Plaintiff or any Class Members for any of these claims.

The Court hasn't decided whether Plaintiff or PBC is correct. Rather, the parties have settled this lawsuit before it has gone to trial. That way, they have avoided the costs and risks of a trial so that the affected applicants and employees (who do not exclude themselves from the Settlement) will get compensation. The Class Representative and the attorneys think the Settlement is in the best interest of all Class Members.

3

# THE SETTLEMENT BENEFITS—WHAT YOU GET

- PBC will pay up to a maximum of $1,192,275 ("Total Settlement Amount") to end this lawsuit.

- Class Members who do not exclude themselves and make a claim will share on a pro rata basis the Net Settlement Fund, which is the $1,192,275 less payments of (1) the amount not to exceed $5,000 payable to the Class Representative as approved by the Court; (2) the sum equivalent to 33-1/3% of the Settlement Fund as attorneys' fees to Class Counsel as approved by the Court; (3) the sum of up to $20,000 as costs to Class Counsel as approved by the Court; and (4) the Settlement Administrator expenses, which are estimated to be no more than $59,000, as approved by the Court. If requested expenses and awards to Plaintiff are granted, your share of the fund will be approximately $30.73 if every Class Member who does not exclude himself or herself makes a claim.

- If the total amount claimed by Settlement Class Members is less than Sixty Percent (60%) of the Net Settlement Amount, the payments made to the Settlement Class Members will proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms will equal not less than Sixty Percent (60%) of the Net Settlement Amount.

- Any uncashed settlement compensation from the Settlement Fund after distributing the Net Settlement Fund and after the 90-day period for negotiating checks (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis via check to those Settlement Class Members who timely negotiated the first checks they received, who shall have 90 days from the date these second checks are mailed to negotiate their checks.

- Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount and after the 90-day period for negotiating the second distribution checks will constitute a *cy pres* fund which will be donated to United Way Metropolitan Dallas, subject to Court approval.

If you do not exclude yourself from the settlement, you will be bound by the release of claims in this settlement. "Released Claims" means all claims alleged in the Litigation (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§§ 1681b(b)(2)(A)) and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether such factual basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims extends to the limits of the Covered Period.

The release applies to the Covered Period from **June 19, 2015 through December 1, 2016** (for applicants); from **June 19, 2015** through **September 4, 2017** (employees subject to DOT background checks); and from **June 19, 2015** through **October 2, 2017** (for all other employees**).

For the full language of the release, you may view the settlement agreement that has been filed with the Court. This Notice does not summarize the entire settlement agreement. A complete copy of the settlement agreement is on file with the Court and can also be viewed at the class website at _____.

4

Class Counsel is experienced in class action litigation and has a duty to represent the interests of all Class Members. Based on analyzing the law concerning the claims, analyzing records, making factual investigations, considering risks involved in further litigation, ensuring that the Class receives payment without having to wait for years of protracted litigation with no certainty of success, and using a private mediator to assist in reaching a fair settlement of this lawsuit, Class Counsel believes the Settlement is fair, adequate and reasonable.

You are receiving Class Notice of this Settlement because the Court has reviewed the Settlement and has preliminarily determined the Settlement can go forward.

PBC represents that, as required by law, it will not retaliate against any employee because of his or her participation in the Settlement.

To receive your settlement payment, you do not have to do anything. Your interest as a member of the Settlement Class will be represented by the Plaintiff and Counsel for the Class. You will be bound by any judgment arising from the settlement.

## YOUR RIGHTS AND OPTIONS

You must decide whether to be included in Settlement or excluded from the Settlement and you must decide this NOW.

If you make a claim and the Court orders final approval of the Settlement, you will receive your share of the net settlement funds, and you will also give up your rights to pursue the claims that are released by the Settlement.

To receive your portion of the Settlement, you must sign and date the enclosed "Claim Form" and mail it to the address listed on the "Claim Form." **The Claim Form must be delivered to the U.S. Postal Service so that it can be postmarked on or before** _____ **[to be filled in by Claim Administrator** _____ **based on actual mailing date of Notice]**. If you do not sign and return the Claim Form so that it is postmarked by _____, and you do not exclude yourself from the lawsuit, you will not receive any payment from the Settlement and you will have released your rights to bring an action against PBC for the claims that are released in this lawsuit.

It is very important that you return the Claim Form if you want to receive payment from this Settlement.

If you do nothing and the Court orders final approval of the Settlement, you will not receive your share of the net settlement funds, and you will also give up your rights to pursue the claims that are released by the Settlement.

If you choose to be excluded from the settlement, you will not be bound by any judgment or other final disposition of the lawsuit. You will retain any claims against PBC you may have.

To ask to be excluded, you must send an "Exclusion Request" with your name, address, and signature by U.S. mail, stating that you want to be excluded. You must mail your Exclusion Request so that it is postmarked by **[DATE]** to:

_____

*Bottling Group, LLC FCRA Litigation*

5

_____

_____

If the request is not postmarked on or before DATE, your exclusion will be invalid, and you will be bound by the terms of the settlement approved by the Court, including without limitation, the judgment ultimately rendered in the case, and you will be barred from bringing any claims which arise out of or relate in any way to the claims in the case as specified in the release referenced in above.

You may withdraw your exclusion prior to _____ by writing to the Settlement Administrator and stating your intent to withdraw your request to be excluded.

Unless you exclude yourself, you give up any right to sue PBC for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately because you must exclude yourself from *this* Settlement to continue your own lawsuit. ***Remember, the exclusion deadline is*** _____.

If you exclude yourself, you are not eligible to receive any money from this settlement, but you may sue, continue to sue, or be part of a different lawsuit against PBC. If you ask to be excluded, you will not be bound by the Settlement or have any right to object, appeal or comment thereon.

## THE LAWYERS REPRESENTING YOU

The Court has approved the law firms of Peter R. Dion-Kindem, P.C., The Blanchard Law Group, APC, Wenzel Fenton Cabassa, P.A., and Morgan & Morgan to represent you and other Class Members in this class action. These lawyers are called Class Counsel. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class counsel will ask the Court to approve a payment equivalent to 33-1/3% of the Settlement Fund for attorney's fees and up to $20,000 for litigation costs, which will be paid out of the $1,192,275 settlement fund. These attorney's fees will pay Class Counsel for bringing the lawsuit on your behalf, investigating the facts, litigating the case, and negotiating the Settlement. PBC has agreed not to oppose these attorney's fees or costs. The Court may award less than these amounts.

## OBJECTING TO THE SETTLEMENT

You can also tell the Court that you don't agree with the Settlement or some part of it.

The Court will hold a Final Approval Hearing on _____ at ____ a.m. in Courtroom – of the United States District Court, Southern District of New York at 40 Foley Square, New York, NY 10007. As a Class Member, you may object to the Settlement or file a statement in support of the Settlement for consideration at the Final Approval Hearing.

Any Settlement Class Member who wishes to object to the settlement must return to the Settlement Administrator a timely written statement of objection no later than **[the Objections Deadline]**. The Notice of Objection must state (1) the case name and number; (2) the name, address, telephone number, and email address of the Settlement Class Member making the objection; (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the final Fairness Hearing, if the Settlement Class Member making the objection intends

6

to appear; (6) a list of any witnesses the Settlement Class Member making the objection may call to testify at the Fairness Hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which that Settlement Class Member may offer at the Fairness Hearing. In addition, you must personally sign the objection. If you do not object in this manner, your objection will be invalid, you will be unable to object to the terms and conditions of the Agreement, and you will be bound by the settlement, if approved.

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class and don't want to release your individual claims. If you exclude yourself, you have no basis to object because the case no longer affects you.

# FINAL APPROVAL OF THE SETTLEMENT

The Court will hold a final hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

If the Court grants final approval of the Settlement, all Class Members (who do not exclude themselves) will be bound by the terms of the Settlement, including the release set forth below. Class Members who timely and validly return their Claim Form will receive their portion of the Net Settlement Amount under the terms of the Settlement.

The release language in the Settlement is as follows:

> On the Settlement Effective Date, all members of the Settlement Class who have not timely and properly opted out of the settlement, and all those acting or purporting to act on their behalf including, but not limited to, their successors, assigns, legatees, heirs, and personal representatives, fully and forever release, waive, acquit, and discharge Defendant and the Released Parties to the fullest extent permitted by law from any and all claims alleged in the Litigation (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§§ 1681b(b)(2)(A)) and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether such factual basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims extends to the limits of the Covered Period.

This release includes a release of all penalties, tax, and interest associated with the foregoing.

# GETTING MORE INFORMATION

You may contact Class Counsel at the addresses listed below without having to pay for any attorneys' fees. You also have the right to speak with an attorney of your choosing at your own expense. Do not contact the Court, PBC or PBC's Counsel.

The Dion-Kindem Law Firm
Attn: Peter R. Dion-Kindem
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
818-883-4900
peter@dion-kindemlaw.com

and

The Blanchard Law Group, APC
Attn: Lonnie C. Blanchard, III
3311 East Pico Boulevard
Los Angeles, California 90023
Telephone:      (213) 599-8255
lonnieblanchard@gmail.com

33527731.8

8