# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Altareek Grice,

    Plaintiff,

    v.

Pepsi Beverages Company, *et al*.,

    Defendant.

**17-CV-8853 (JPO)**
**CLASS ACTION**

**AMENDED MEMORANDUM IN
SUPPORT OF MOTION FOR
CERTIFICATION OF THE
SETTLEMENT CLASS AND FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iv

I.   INTRODUCTION ............................................................................................... 1

II.  THE CASE ........................................................................................................... 2

    A.   Factual Summary ........................................................................................ 2

    B.   Procedural History ...................................................................................... 3

    C.   Settlement Negotiations ............................................................................. 3

    D.   Summary of the Settlement ........................................................................ 3

    E.   Preliminary Approval ................................................................................. 5

    F.   Notice to Class Members and Claims Submitted ...................................... 6

    G.   Monetary Relief to Class Members Submitting Valid Claim Forms ......... 6

    H.   Objections and Exclusions ......................................................................... 6

III. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................. 6

    A.   Numerosity .................................................................................................. 7

    B.   Commonality Under Rule 23(a)(2) ............................................................ 8

    C.   Typicality Under Rule 23(a)(3) .................................................................. 9

    D.   Adequacy of Representation Under Rule 23(a)(4) ..................................... 9

    E.   Certification of the Settlement Class is Proper Under Rule 23(b)(3) ................. 10

IV.  THE SETTLEMENT MERITS FINAL APPROVAL ...................................... 12

    A.   The Proposed Settlement is Procedurally Fair ......................................... 13

    B.   The Proposed Settlement is Substantively Fair ....................................... 14

        1.   Litigation Through Trial Would be Complex, Costly and Long ............. 14

        2.   Reaction of the Class Has Been Positive ............................................. 16

        3.   Sufficient Information Has Been Exchanged to Allow Responsible Resolution of the Case ................................................................. 16

        4.   Plaintiff Would Face Real Risks if the Case Proceeded ....................... 17

        5.   Maintaining the Class Through Trial Would Not Be Simple ................. 18

        6.   Defendant's Ability to Withstand a Greater Judgment Is Not Determinative ................................................................. 18

        7.   The Relief Offered by the Settlement is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation ............... 18

V.   NOTICE TO THE CLASS WAS APPROPRIATE ........................................... 20

A.     The Notice Program ........................................................................ 20

B.     The Scope of the Notice Program Was Adequate .............................................. 21

C.     The Notice Program Has Been Successful ........................................................ 22

VI.     CONCLUSION........................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997) ........................................ 10

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) ............................ 13

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6
   (S.D.N.Y. June 7, 2011) ........................................................................................ 13

*Charron v. Weiner,* 731 F.3d 241, 247 (2nd Cir 2013) ................................................. 14

*Chatelain v Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ..................... 13

*City of Detroit v. Grinnell Corp., et al.*, 495 F.2d 448, 463 (2d Cir. 1974) ........................... 14, 17

*Clem v. KeyBank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *4-5 (S.D.N.Y. June 20, 2014) 16

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 482-83 (2d Cir. 1995) ........................................ 7

*Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006) ........................................ 6, 7, 9

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) .......................................................... 16

*Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov.
   15, 2012) ................................................................................................................ 13

*Hillson v. Kelly Services Inc.,* 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017) ................ 19

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d
   145 (2d Cir. 1987) .................................................................................................. 18

*In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)* ........................... 8

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ................... 16

*In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969) .............................................. 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS
   120953 at *11 (S.D.N.Y. Dec. 23 2009) .................................................................. 10

*In re Mego Fin. Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000) ........................ 16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL
   313474, at *8 (S.D.N.Y. Feb. 1, 2007) .................................................................... 20

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) ...................... 12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ........................ 12

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d. Cir. 2001) ................... 10

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) ................. 15

*Indergit v. Rite Aid Corp.,* 293 F.R.D. 632, 652 (S.D.N.Y. 2013) ................................................. 9

*Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408 (S.D.N.Y. 2013), *aff'd,* 602 F. App'x 3 (2d Cir. 2015)............................................................................................................................................. 8

*Kamean v. Local 363, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986) ........................................................................... 8

*Labbate- D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451 (E.D.N.Y. 1996) ........................ 11

*Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) ................................................................................................... 19

*Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) .................................................................................................................................................... 19

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ........................ 15

*Marisol A. v. Giuliani*, 1998 U.S. Dist. LEXIS 5760, 1998 WL 199927 (S.D.N.Y. Apr. 23, 1998) .................................................................................................................................................... 8

*Marison A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) ......................................................... 7

*Marriott v. Cty. Of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) ................................... 10

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) ................................................. 10

*Meredith Corp. v. SESAC, LLC*, No. 09 Civ. 9177 (PAE), 2015 WL 728026, at *9 (S.D.N.Y., Feb. 19, 2015)..................................................................................................................... 14

*Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) .................................................................................................................................................... 19

*Musa v. SOS Security, LLC*, 2:17-cv-05681 (Dkt. 49) (D.N.J. Sept. 13, 2018) ........................ 19

*N.J. Carpenters Health Fund v. DLJ Mort. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17, 2014)..................................................................... 9

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)................................................................... 18

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011)................................... 17

*Reade- Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................. 7

*RMED Int'l, Inc. v. Sloan's Superkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, *1 (S.D.N.Y. May 15, 2003) ............................................................................................................ 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ........................................................................................................................................ 15

*Trief v. Dun & Bradstreet Corp., 14 F.R.D. 193, 200 (S.D.N.Y. 1992)* ...................................... 8

*Wallace v. Intralinks*, 302 F.R.D. 310 (S.D.N.Y. 2014) ............................................................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir. 2005) ...................................... 12

*Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) ............................................... 21

*Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982) ........................................................... 16

*Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ..................................................... 16

**Statutes**

15 U.S.C. § 1681b(b)(2) ................................................................................................... 2, 10, 17

15 U.S.C. § 1681b(b)(2)(A) ...................................................................................................... 5

15 U.S.C. § 1681n(a) .............................................................................................................. 11

Fair Credit Reporting Act .................................................................................................. 2, 5, 8

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................................... 6, 7

Federal Rule of Civil Procedure 23(a) .............................................................................. 6, 7, 12

Federal Rule of Civil Procedure  23(a)(1) ................................................................................ 7

Federal Rule of Civil Procedure 23(a)(2) ................................................................................ 7

Federal Rule of Civil Procedure 23(a)(3) ................................................................................ 8

Federal Rule of Civil Procedure 23(a)(4) ................................................................................ 9

Federal Rule of Civil Procedure 23(b) .................................................................................... 6

Federal Rule of Civil Procedure 23(b)(3) ................................................................... 7, 10, 11, 12

Federal Rule of Civil Procedure 23(e) ................................................................................... 12

Plaintiff, ALTAREEK GRICE ("Named Plaintiff" or "Plaintiff") and Defendant Bottling Group, LLC (erroneously sued as Pepsi Beverages Company) ("Defendant" or "PBC") file this Joint Motion with incorporated Memorandum of Law seeking an order: (1) certifying the settlement class; and (2) approving as fair, reasonable and adequate the settlement as memorialized in the Stipulation and Agreement of Settlement (the "Settlement Agreement "); and (3) entering final judgment in this matter. A separate motion has been filed with the Court seeking an award of reasonable attorneys' fees, costs and expenses, and service awards to the Plaintiff as Class Representative.

## I.      INTRODUCTION

On May 23, 2018, this Court granted preliminary approval to the proposed Stipulation and Agreement of Settlement ("Settlement Agreement") and authorized notice to the Settlement Class. *See* Preliminary Approval Order (ECF No. 38). American Legal Claims Services ("ALCS") was engaged to effectuate the notice plan set forth in the preliminary approval order. *See* Affidavit of ALCS (ECF No. **). Notice was mailed to over 23,000 class members. *Id*. at ¶ 5. A case specific website and toll-free number were established. *Id*. at ¶¶ 15-17. The deadline for objections and exclusions has passed. No Class member has objected and only three have opted out. *Id*. at ¶¶ 9, 14.

Class Counsel asserts that the proposed settlement is fair, reasonable and adequate and should be given final approval. The settlement is in the best interest of the class and provides an excellent result for the class particularly considering the risks and costs of litigation, the difficulties faced in seeking to certify a class, the inherent difficulties and delays were the case to be litigated through class certification, appellate review of any certification decision, and trial.

Before and during the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel focused their investigation and legal research on the underlying merits of Class Members' claims, including the claims and potential defenses and the damages to which Class Members were entitled.

While Defendant disputes the claims alleged by Plaintiffs and maintain that it has valid defenses as to liability and damages, Defendant has agreed to provide relief to Settlement Class Members as set forth in the Settlement Agreement.

Based on this factual and legal investigation, Class Counsel has concluded that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate to Class Members, and respectfully request that the Court approve the settlement.

## II.    THE CASE

### A.    Factual Summary

Plaintiff, on his own behalf and on behalf of the putative class, asserted a cause of action against PBC for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2). Specifically, Plaintiff alleged Defendant violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure." Plaintiff alleged that the disclosure used by Defendant contained extraneous language that confused him and distracted him when he attempted to read the document. Consequently, Plaintiff alleges he and the members of the putative class were entitled to statutory damages between $100 and $1,000.

**B.    Procedural History**

On June 19, 2017, Plaintiff filed this action in the California Superior Court for the County of San Diego, which PBC then removed to United States District Court for the Southern District of California. Pursuant to PBC's unopposed motion, the case was transferred to the United States District Court for the Southern District of New York.

**C.    Settlement Negotiations**

After Plaintiff filed the action, the Parties had numerous discussions regarding Plaintiff's allegations, Plaintiff's theory of the case and the potential for early settlement. The parties discussed the potential strengths and weaknesses of the allegations in support of, and defenses to, the action. In anticipation of mediation, the Parties extensively briefed their respective positions and exchanged pertinent information enabling the Parties to evaluate their respective cases.

On January 24, 2018, the Parties participated an all-day mediation with Hunter Hughes, a respected mediator with extensive FCRA experience. After a full day of hard fought negotiations, the Parties reached an agreement in principal concerning the material terms of the proposed settlement, as memorialized in the Settlement Agreement.

**D.    Summary of the Settlement**

The Settlement Agreement provides relief to the 23,133 members of the Settlement Class defined as:

All individuals as to whom, during the period from June 19, 2015 through and including December 1, 2016 (for applicants); June 19, 2015 through and including September 4, 2017 (for employees subject to Department of Transportation background checks); and June 19, 2015 through and including October 2, 2017 (for all other employees), a consumer report for employment purposes was procured by Bottling Group, LLC, Grayhawk Leasing, LLC, or New Bern Transport Co.

3

Defendant agreed to pay $1,192,275 to the Common Fund for the benefit of the Settlement Class, equivalent to $51.54 for each of the Class Members. From the Common Fund, PBC agreed it would not oppose Class Counsel's contingent attorneys' fee award of 1/3 of the common fund, totaling an amount not to exceed $397,425 and subject to this Court's approval, Class Counsel's costs in prosecuting this matter, not to exceed $20,000, the proposed Class Representative Service Payment to Plaintiff for an amount not to exceed $5,000, and an amount not to exceed $59,000 for Settlement Administration Costs.

The Net Settlement Fund, *i.e.* the amount available to the Class Members submitting valid claims forms, is $710,850. Under the terms of the Settlement Agreement, if the total amount claimed by Class Members was less than 60% of the Net Settlement Fund, the payments made to the Settlement Class Members would proportionately increase such that the total payments made to Settlement Class Members who submitted timely Claim Forms would equal 60% of the Net Settlement Fund. It was agreed any amounts of the Net Settlement Fund over the Sixty Percent (60%) minimum that were not claimed by any Class Member by the Response Deadline would revert to Defendant.

Initial payments to Settlement Class Members are to be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. If the value of uncashed checks exceeds $20,000 after distributing the Net Settlement Fund, any uncashed settlement compensation in the Settlement Fund (the Settlement Second Distribution Total Amount) will be pooled and distributed on a pro-rata basis to Settlement Class Members who timely negotiated the first checks they received. Any uncashed settlement compensation from the Settlement Fund after distribution of the Settlement Second Distribution Total Amount will constitute a *cy pres* fund which will be donated to Metropolitan Dallas United Way, subject to Court approval. Upon the Court's approval of the Settlement Agreement, all members of the Settlement Class who have not timely and properly

4

opted out of the settlement will release PBC to the fullest extent permitted by law from any and all Released Claims.

> Released Parties is defined as:
>
>> Grayhawk Leasing, LLC, New Bern Transport Co, and Defendant Bottling Group, LLC (which sometimes are referred to, individually or collectively, as "PBC Beverages Company," or "PBC"), and its and their predecessors, successors, subsidiaries, parents, and assigns, and any and all of their past, present and future directors, officers, trustees, employees, attorneys, agents, servants and representatives, whether in their individual or official capacities.
>
> "Released Claims" is defined as:
>
>> All claims alleged in the Litigation (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C. § 1681b(b)(2)(A)) and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether the factual basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims extends to the limits of the Covered Period.

**E.    Preliminary Approval**

On April 23, 2018, the Parties jointly moved the Court to preliminarily approve the Settlement Agreement. On May 2, 2018, the Court preliminarily approved the settlement; provisionally certified the Settlement Class; appointed Plaintiff Altareek Grice as Class Representative; designated Marc R. Edelman of the law firm of Morgan & Morgan, P.A., Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C., Lonnie C. Blanchard, III of The Blanchard Law Group APC, Brandon J. Hill and Luis Cabassa of Wenzel Fenton Cabassa, P.A., as counsel for the Settlement Class; and set the date for the final fairness hearing [ ECF 47 ].

### F.      Notice to Class Members and Claims Submitted

On July 6, 2018, ALCS mailed the Class Notice in substantially similar form to to the Order Preliminarily Approving Settlement and Directing Notice to Class. *See* ALCS Affidavit., ¶ 5. After re-processing returned Notice packages, ALCS estimates Notice Packages were delivered to approximately 97.3% of the members of the Settlement Class. Id. at ¶ 8. Members of the Settlement Class submitted 1,879 valid claims forms.

### G.      Monetary Relief to Class Members Submitting Valid Claim Forms

Pursuant to the Settlement Agreement, Class Members submitting valid claim forms will receive their *pro rata* share of $426,510 (equal to 60% of the $710,850 Net Settlement Fund). Thus, if the Court grants Final Approval, each Settlement Class Member who timely submitted a valid claim form will receive approximately $227.00.

### H.      Objections and Exclusions

No Settlement Class Members notified Counsel for the Parties or the Court of any objections to the Settlement Agreement. Three Class members excluded themselves from the Settlement.

The Parties, having complied with the notice provisions set forth in the Settlement Agreement and as ordered by the Court, now come seeking final approval of the settlement. As set forth below, the settlement meets the standards for final approval, as it falls well within the range of possible approval, was the product of thorough investigation and arm's length settlement negotiations between experienced counsel, and contains no facial deficiencies.

### III.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

When evaluating a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.

2006). On May 23, 2018 the Court preliminarily certified the Settlement Class, and Plaintiff now respectfully request the Court to grant final certification under Fed. R. Civ. P. 23.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. In addition, Plaintiff seeks final certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade- Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006)(quoting *Marison A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). As discussed below, these requirements are met for purposes of settlement in this case.

### A.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In the Second Circuit, numerosity is presumed if the putative class consists of more than 40 individuals." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-1368, 2014 U.S. Dist. LEXIS 36925, at *10 (E.D.N.Y. Mar. 14, 2014) (citing *Consol. Rail Corp. v. Hyde Park.*, 47 F.3d 473, 482-83 (2d Cir. 1995). Plaintiff easily satisfies the numerosity requirement because there are over 23,000 Class Members.

## B.      Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *See Cent. States* 504 F. 3d at 245; Fed. R. Civ. P. 23(a)(2). Although the claims "need not be identical," they must share "common questions of fact or law." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing *Port Auth. Police Benev. Ass'n, Inc. v Port Auth. of N.Y. & N.J.*, 698 F.2d 150-153-54 (2d Cir. 1983)). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Here, PBC used the same disclosure form to obtain the consumer reports of all Settlement Class members. Therefore, Settlement Class Members' claims present a myriad of common questions of law and fact, all of which arise from Defendant's FCRA disclosure form, specifically, whether Defendant procured or caused to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes and whether Defendant acted willfully or negligently in disregard of the FCRA. These questions can be determined on a class wide basis without regard for evidence pertaining to individual class members. Commonality is, therefore, satisfied for settlement purposes. *See, e.g., Marisol A. v. Giuliani*, 1998 U.S. Dist. LEXIS 5760, 1998 WL 199927 (S.D.N.Y. Apr. 23, 1998) (commonality "hinges not on the individual circumstances of each plaintiff, but on the actions of defendants"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013), *aff'd,* 602 F. App'x 3 (2d Cir. 2015) (defendant's uniform conduct as to all class members weighs in favor of commonality).

### C.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality does not require that the representatives' claims be identical to those of the class members." *Frank,* 228 F.R.D. at 182 (W.D.N.Y.)(citing *Trief v. Dun & Bradstreet Corp., 14 F.R.D. 193, 200 (S.D.N.Y. 1992)).* Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376) (quoting *In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).* "

Here, Plaintiff was provided with the identical disclosure from that was also provided to the other Class members. Therefore, the same factual and legal circumstances form the basis of Plaintiff's claims as well as the Class members' claims. Plaintiff and the Class members have suffered the same injury and are entitled to the same statutory damages. Like commonality, typicality is plainly satisfied here. *See also*, *Indergit v. Rite Aid Corp.,* 293 F.R.D. 632, 652 (S.D.N.Y. 2013).

### D.     Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a)(3) is that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." Denney, 443 F.R.D. at 263). Generally speaking, the "adequacy requirement is not demanding." *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).

A "class representative must … possess the same interest and suffer the same injury as the class members." *N.J. Carpenters Health Fund v. DLJ Mort. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 at *18 (S.D.N.Y. Mar. 17, 2014). Plaintiff is an "adequate"

class representative. Plaintiff was provided the same disclosure document, suffered the same alleged harm, and is entitled to the same relief as all of the other Settlement Class Members. Plaintiff's interests are not antagonistic with the Settlement Class and no fundamental conflict exists. Plaintiff has actively participated in the litigation of this case and has been in regular communication with his attorneys regarding these proceedings. Plaintiff has had, and continues to have, every incentive to litigate his case to the fullest extent and maximize the amount recovered for the entire Settlement Class.

Plaintiff also selected counsel adequate to represent the interests of the class. With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims and interviewing putative class members prior to filing the action. Class Counsel have a wealth of experience in litigating complex class action lawsuits, including Rule 23 FCRA class actions. Based on their experience and expertise, Class Counsel were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate.

### E.    Certification of the Settlement Class is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See In re Marsh & McLennan Cos.,*

*Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS 120953 at *11 (S.D.N.Y. Dec. 23 2009).

The essential inquiry for predominance is whether "liability can be determined on a class-wide basis, even then there are some individualized damages issues." *Marriott v. Cty. Of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005)(quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d. Cir. 2001)). Where plaintiffs are "unified by a common legal theory" and "by common facts," predominance is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiff's common factual allegations and common legal theory – that Defendant violated 15 U.S.C. § 1681b(b)(2) by failing to provide them with a lawful disclosure document prior to obtaining their consumer reports for employment purposes - predominate over any questions that may affect individual Class Members. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for settlement purposes.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* Fed. R. Civ. P. 23(b)(3). As to whether class certification is the superior method of litigation, Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or  undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Torres*, 2014 U.S. Dist. LEXIS 36925, at *28 (quoting Fed. R. Civ. P. 23(b)(3)).

"Class actions are found to be superior to individual trials 'when the main objectives of Rule 23 are served,' including 'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'" *Id* (quoting *Labbate- D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). "Class actions are also often the superior form of adjudication when the remedies available to the individual class members are so small that members would lack incentives to proceed individually." *Id.* (citations omitted). In this case, the FCRA provides only statutory damages between $100 - $1,000 per violation. *See* 15 U.S.C. § 1681n(a).

The class action device is superior in this case because the Class Members have limited financial resources with which to prosecute individual claims. Employing the class action device here will achieve economies of scale, will conserve judicial resources, and will avoid the waste and delay of repetitive proceedings and inconsistent rulings. The Settlement provides the Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process.

The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the proposed Settlement Class is appropriate.

## IV.    THE SETTLEMENT MERITS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval to ensure that the settlement is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). The issue of whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 116-17 (2d Cir. 2005) (emphasizing the strong judicial policy in favor of class action

settlements); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

### A.   The Proposed Settlement is Procedurally Fair

To determine substantive fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart*, 396 F.3d 96 at 116). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has noted a strong initial presumption of fairness that attaches to proposed settlements that, as here, are reached by experienced counsel after arm's-length negotiations. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (finding a "strong initial presumption" that a compromise between experienced counsel is "fair and reasonable"; *Chatelain v Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (also finding a "strong initial presumption of fairness" then the settlement is the result of arm's length negotiations between experienced counsel).

The proposed settlement is procedurally fair because it was a product of mediation, after intense negotiations and after experienced counsel had evaluated the relative merits of Plaintiff's claims. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (raising a presumption that a settlement meets the requirements of due process when reached after arm's-length negotiations between experienced counsel). Class Counsel conducted a thorough investigation of Plaintiff's claims, researched the law and evaluated the relevant claims and possible defenses. In advance of the mediation, both sides exchanged information necessary to properly evaluate the claims. At the end, the proposed settlement was reached at the conclusion of a full day mediation.

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay. *See Hernandez v. Merrill*

*Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012)(endorsing early settlement of class actions); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011)(commending parties for negotiating early settlement). Here, the monetary benefits of the settlement are appropriate. The total value of the relief made available to the Settlement Class was $1,192,275. As discussed below, Plaintiff and Class Counsel submit that the proposed settlement is in the best interest of the Class and represents a fair, reasonable and adequate recovery particularly in light of the risks and costs of litigation, the relative swiftness of the Settlement and the immediate recovery provided in the proposed plan of distribution to the Class.

### B.       The Proposed Settlement is Substantively Fair

The Second Circuit has identified nine (9) factors that guide the district courts for evaluating the substantive fairness of a class action settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp., et al.*, 495 F.2d 448, 463 (2d Cir. 1974). All of the applicable *Grinnell* factors support final approval of the Settlement.

### 1.       Litigation Through Trial Would be Complex, Costly and Long

Courts have consistently recognized the complexity, expense, and likely duration of litigation as critical factors in evaluating the reasonableness of a class action settlement. *See, e.g.*, *Charron v. Weiner,* 731 F.3d 241, 247 (2nd Cir 2013); *see also Meredith Corp. v. SESAC, LLC*,

No. 09 Civ. 9177 (PAE), 2015 WL 728026, at *9 (S.D.N.Y., Feb. 19, 2015). By reaching a favorable settlement prior to having to respond to a motion to dismiss, summary judgment motion or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recover for the Settlement Class.

Approval of the settlement will mean a present recovery for Class Members. Although Plaintiff and Class Counsel believe that the claims asserted are meritorious, continued litigation against PBC posed significant risks that made any recovery uncertain. At the outset, continued litigation of this matter would require the Court to resolve the thresh hold question of whether Plaintiff has Article III standing to pursue his claims in this Court. If the Court determined Plaintiff did not have Article III standing, Plaintiff and the Settlement Class would not be permitted to pursue the action and would therefore receive no monetary relief.

Continued litigation would last for an extensive period of time before a final judgment might be entered in favor of the Class. Delay, not just at the trial stage, but through post-trial motions and the appellate process as well, could force Class Members to wait even longer for any recovery. *See, e.g.*, *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (delay from appeals is a factor to be considered); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years.").

The proposed settlement makes monetary relief available to Class Members in a prompt and efficient manner and eliminates the risk of no recovery at all. It is, therefore, in the best interest of the Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d

254, 261 (S.D.N.Y. 2003) ("even if a … class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

### 2.    Reaction of the Class Has Been Positive

"[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Superkts., Inc*., No. 94 Civ. 5587, 2003 WL 21136726, *1 (S.D.N.Y. May 15, 2003).

Notices to the Class included an explanation of the relief available. The Notices also informed Class Members of their right to object to or exclude themselves from the settlement and explained how to do so. No Class Member objected to the Settlement and only three Class Members requested to be excluded.

This favorable response demonstrates that the Class approves of the settlement, which further supports final approval. *See Clem v. KeyBank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *4-5 (S.D.N.Y. June 20, 2014) (approving settlement in which three of approximately 1,500 class members objected and three opted out)*; Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (finding a strong indication of fairness when the "vast majority of class members neither objected nor opted out).

### 3.    Sufficient Information Has Been Exchanged to Allow Responsible Resolution of the Case

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their cases is one factor that courts consider in

determining the fairness, reasonableness, and adequacy of a settlement. *See Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982); *In re Mego Fin. Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

While this settlement occurred very early in the litigation, before formal discovery began, the Parties exchanged a significant amount of information during the negotiations. Defendant provided the Class Counsel all discovery requested. The accumulation of the information permitted Plaintiff and Class Counsel to be well informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims"). Therefore, this Court should find that this factor also supports final approval of the settlement.

### 4.    Plaintiff Would Face Real Risks if the Case Proceeded

In assessing the settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463). Although Plaintiff believes the case is strong, it is also risky. "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainly of the outcome." *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

While Plaintiff believes that the claims alleged would ultimately be validated through evidence, Plaintiff also recognizes that continued litigation poses significant risks, particularly concerning the issue of Plaintiff's Article III standing in the aftermath of *Spokeo v. Robins*, 136 S.Ct.1540 (2016). *See, e.g. Crupar-Wienmann v. Paris Baguette America, Inc*., 861 F.3d 76 (2nd Cir. 2017) (Dismissing FACTA action for lack of Article III Standing pursuant to *Spokeo*). But for the agreement now before the court for consideration, Defendant's success on the issue of

Article III standing could result in no relief to the proposed Settlement Class. Progressing to trial and through trial also would involve hurdles for Plaintiff as to both liability and damages. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. That holds especially true in this case, since there are no published jury awards for class actions alleging violations of 15 U.S.C. § 1681b(b)(2). The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of final approval.

     **5.**     **Maintaining the Class Through Trial Would Not Be Simple**

While the Court has preliminarily approved a Settlement Class, there is a risk here of not obtaining class certification if litigation continues and maintaining certification through trial. *See Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of settlement."). Determining whether class certification is appropriate would require extensive discovery and exhaustive briefing. In opposing certification, Defendant would likely argue that individualized factual inquiries would preclude class certification.

     **6.**     **Defendant's Ability to Withstand a Greater Judgment Is Not Determinative**

There is no evidence that Defendant could not withstand a greater judgment. However, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d 164 at 178 n.9 (S.D.N.Y. 2000). Thus, this factor is neutral and does not preclude the Court from granting final approval of the settlement.

     **7.**     **The Relief Offered by the Settlement is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, experienced counsel firmly believe that the settlement, as structured and contemplated by the Parties, represents an educated and eminently reasonable resolution of the dispute. An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved and is in fact an excellent outcome for the Settlement Class. The district court in *Hillson v. Kelly Services Inc.* summarized the results of similar FCRA class action settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30 per class member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

*Hillson v. Kelly Services Inc.*, 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017); *See also Musa v. SOS Security, LLC*, 2:17-cv-05681 (Dkt. 49) (D.N.J. Sept. 13, 2018) (approving

claims made FCRA settlement with gross per capita recovery of $27).

The benefits provided to the Class are reasonable and appropriate even without the risks of continued litigation. Class Members only had to submit a claim form to receive the monetary benefits. For minimal effort and investment, Class Members received a significant return.

Given the hurdles Plaintiff would have to overcome if he was to litigate this case to verdict and the benefits provided by the settlement, this factor strongly favors the granting of final approval.

## V.     NOTICE TO THE CLASS WAS APPROPRIATE

In its preliminary approval Order, the Court also approved comprehensive notice program set forth in the Settlement Agreement. Notice through this program was delivered via U.S. mail, and through a Settlement Website. The results of the notice program reflect its success.

### A.     The Notice Program

The Settlement Administrator, ACLC, mailed the short-form Notice of Proposed Settlement of Class Action, substantially similar in form to the form approved by the Court, to all Settlement Class Members for whom a mailing address was available. *See* Affidavit of ALCS at ¶5 (ECF **). The notice provided an abbreviated, but informative, description of the Action and the proposed settlement, and also explained how to obtain the more detailed long-form notice, how to access the case-specific website (www.beveragesfcrasettlement.com) or call the toll free number set up to provide assistance. Id. at ¶¶ 15-17. The notice also informed Class members how to exclude themselves from the Settlement and how to object to the Settlement. Id. at ¶¶ 9, 14. For any mail notices that were returned undeliverable with forwarding address information, the Settlement Administrator re-mailed the mail notice to the updated address as indicated. Id. at ¶ 6. For any mail notices that were returned undeliverable without forwarding address

information, the Settlement Administrator used reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mailed the mail notice to the extent updated addresses are identified. Id.

**B.    The Scope of the Notice Program Was Adequate**

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules of Civil Procedure, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*). (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)). The notice program was implemented in accordance with the terms agreed upon by the Parties and approved by the Court. Notice to the class was feasible because Class Members had provided their mailing addresses to Defendant during the application process, and the information was stored in Defendant's HRIS system.

The Settlement Administrator was provided a list of 23,133 Class Members, which included each Class Member's last known address. *See* Affidavit of ALCS at ¶ 3 (ECF **). On July 6, 2018, the approved notice was mailed to 23,131 Class Members. Id. at ¶ 5. Of the Notice Packages mailed, 526 were ultimately deemed undeliverable. As a result, Notice Packages were delivered to over 97% of the Class Members. The notice provided each Class Member with pertinent information regarding the case and proposed settlement; their options under the Settlement, including the right to exclude themselves from the Settlement or object to the

21

Settlement.

No Class Member has objected to the Settlement. Three Class Members have requested to be excluded from the Settlement.

**C.    The Notice Program Has Been Successful**

The Claims Period ended on October 16, 2018. By the Response Deadline, Class Members filed 1,879 claims.

## VI.    CONCLUSION

Based on the standards set forth above, the criteria for granting final approval of this complex class action settlement are met. The Settlement was reached as a result of extensive, arm's length negotiations between experienced counsel, and by Plaintiff's counsel's investigation and review of information and data voluntarily produced by Defendant. Class Counsel asserts that the settlement is in the best interests of the class. The settlement will also remove the uncertainties and risks to both parties from proceeding further in the litigation. The monetary benefits of the settlement are appropriate and reasonable and the timing in which the benefits will be provided is significant. The Parties respectfully submit that this settlement is fair, adequate, and that adequate notice has been provided to Settlement Class Members.

For the foregoing reasons, the Parties respectfully request that this Court finally certify the Settlement Class, approve the Settlement as fair, reasonable and adequate, and enter Final Judgment.

/s/ *Marc R. Edelman*
Marc R. Edelman (pro hac vice)
Florida Bar Number: 96342
MORGAN & MORGAN P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 3306
Main No.: 813-577-4722
Facsimile: 813-257-0572

Email: medelman@forthepeople.com

Peter R. Dion-Kindem (pro hac vice forthcoming)
Peter R. Dion-Kindem, P.C.
21550 Oxnard Street, Suite 900
Woodland Hills, CA 91367
peter@dion-kindemlaw.com

Lonnie C. Blanchard, III (pro hac vice forthcoming)
The Blanchard Law Group, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
lonnieblanchard@gmail.com

Luis A. Cabassa (pro hac vice forthcoming)
Florida Bar Number: 0053643
Brandon J. Hill (pro hac vice forthcoming)
Florida Bar Number: 37061
Donna V. Smith (pro hac vice forthcoming)
Florida Bar Number: 661201
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
lcabassa@wfclaw.com
bhill@wfclaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2018, a copy of the foregoing was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ **Marc R. Edelman***_____

Marc R. Edelman, Esq.