UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| ALTAREEK GRICE, *on behalf of himself and all others similarly situated*, | |
|---|---|
| Plaintiff, | 17-CV-8853 (JPO) |
| -v- | AMENDED OPINION AND ORDER |
| PEPSI BEVERAGES COMPANY, et al., Defendants. | |

J. PAUL OETKEN, District Judge:

Plaintiff Altareek Grice, on behalf of himself and others similarly situated, brought this action against Defendant Bottling Group, LLC s/h/a Pepsi Beverages Company ("PBC") on the basis of PBC's alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2). On November 8, 2018, the same date on which Plaintiff moved for a final approval of a class action settlement of up to $1,192,275 (Dkt. No. 54), Plaintiff separately moved for an award of attorney's fees and costs, to be paid out of the settlement fund to Class Counsel (Dkt. No. 56). After a fairness hearing on November 15, 2018, the Court certified the proposed class and approved the settlement as fair and adequate under Federal Rule of Civil Procedure 23(e), but reserved judgment on Plaintiff's motion for fees and costs. For the following reasons, the attorney's fees motion is granted in part and denied in part.

I.  **Background**

On June 19, 2017, Plaintiff filed this action in the California Superior Court for the County of San Diego, alleging that PBC has violated the FCRA by procuring consumer reports of Plaintiff and class members for employment purposes without making the required disclosure in a stand-alone document. (Dkt. No. 1-2 ¶ 1.) PBC then removed this action to the United States District Court for the Southern District of California (Dkt. No. 1), and the case was

1

transferred to this Court on November 14, 2017 (Dkt. No. 12).  On January 31, 2018, following a private mediation held before the parties had engaged in any extensive discovery, the parties notified the Court that they had settled.  (Dkt. Nos. 20, 21.)

Under the parties' proposed settlement terms, PBC agrees to pay $1,192,275 to a common fund.  (Dkt. No. 39 (the "Settlement Agreement") ¶ 23.)  The common fund is intended to cover all payments owed under the settlement, including class member payouts, attorney's fees and costs, the cost of settlement administration, and a service award for Plaintiff Grice.  (Settlement Agreement ¶ 24.)  After deducting all fees, costs and the service award from the common fund, the rest of the fund (the "Net Settlement Fund")—$710,850—will be distributed to class members submitting valid claims forms.

However, although the putative class consists of 23,133 members, only 1,879 members have submitted valid claims forms ("participating class members"), representing approximately 8.1% of the entire class.  (Dkt. No. 52 ¶ 10.)  The low participation rate here triggers a reversionary term under the Settlement Agreement which allows PBC to claw back 40% of the Net Settlement Fund—$284,340—with the remaining 60%—$426,510—to be distributed equally among participating class members.  (Settlement Agreement ¶ 26.)

Class Counsel now move for an attorney's fees award of $397,387, costs reimbursement totaling $74,507.79, and a service award for Grice of $5,000.  (Dkt. No. 56.)  The $397,387 attorney's fees figure represents one-third of the original $1,192,275 common fund created by the terms of the parties' settlement.  (Dkt. No. 57 at 2.)  In support of this figure, Class Counsel represent that over 450 hours were spent on this matter by attorneys working at hourly rates ranging from $500 to $875, resulting in a lodestar figure of $331,281.25.  (Dkt. No. 57 at 5, 13.)

Per the terms of the Settlement Agreement, PBC agreed not to oppose the attorney's fees award (Dkt. No. 55 at 10), and no class member has objected to the instant motion (Dkt. No. 52 ¶ 14).

## II.     Legal Standard

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts in this Circuit consider six nonexclusive factors (hereinafter, the "*Goldberger* factors") in evaluating the reasonableness of a fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (omission in original) (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

The Second Circuit has approved the use of two methods to calculate attorney's fees: the lodestar method and the percentage of the fund method. *See id.* at 47. Under the lodestar method, the district court multiplies the reasonable hours billed by a reasonable hourly rate to create a presumptively reasonable fee. *Id.* Under the percentage of the fund method, class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class. *Id.* Courts in this Circuit tend to apply the percentage method, which, unlike the lodestar method, "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)). But even when the percentage of the fund method is used, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a cross check on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted).

**III.    Discussion**

   **A.    Attorneys' Fees**

Following the approach set forth by Judge Schofield in *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380 (S.D.N.Y. 2017), this Court "applies the percentage of the fund method and considers the *Goldberger* factors in three steps." *Id.* at 384–85.  First, the Court determines a reasonable baseline fee by comparing the requested rate to that awarded in "other common fund settlements of similar size and complexity, taking into account the requested fee in relation to the settlement, the magnitude and complexity of the instant case and the policy consideration of using a sliding scale based on the amount of the settlement to avoid a windfall to class counsel." *Id.* at 385.  Next, the Court considers some of the remaining *Goldberger* factors, such as the risk Class Counsel faced in litigating this case, the quality of representation provided by Class Counsel, and any remaining public policy concerns that render further adjustments to the baseline fee necessary. *Id.*  Finally, the Court will apply the lodestar method as a cross-check, in order to compare the resulting awarded percentage with the time and labor actually expended by Class Counsel. *Id.*

   **1.    Comparison to Court-Approved Fees in Other Common Fund Settlements**

The first step in the Court's analysis is to determine a baseline for a reasonable fee by looking to other common fund settlements of similar size and complexity.

Courts often look to empirical evidence of attorney's fees awarded in similar cases as a starting point for the baseline reasonable fee inquiry. *Id.*  Recent studies of attorney's fees awards in common fund settlements of a size similar to this one have found that the median percentage for such awards ranged from 26.4% to 30%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839

(2010) (analyzing nearly 700 common fund settlements from 2006 and 2007); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 265 (2010) (analyzing nearly 700 common fund settlements from 1993 to 2008); *cf.* William B. Rubenstein, 5 *Newberg on Class Actions* §15:78 (5th ed. 2018) (mean percentage for fees in Second Circuit class action cases from 2006 to 2011 was 26.9%). Empirical evidence also shows that for FCRA cases, the median fee is approximately 29%. *See* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937, 952 (2018).

In support of the proposed one-third fee, Plaintiff relies on three cases from this District. (Dkt. No. 57 at 9.) However, each of these three cases differs materially from the instant case both in their common fund sizes and in their causes of action. *See Meredith Corp. v. SESAC, L.L.C.*, No. 09 Civ. 9177, 2015 WL 728026, at *16 (S.D.N.Y. Feb. 19, 2015) (complex antitrust case in which attorney's fees equaled 20.2% of $58.5 million settlement); *Spicer v. Pier Sixty L.L.C.*, No. 08 Civ. 10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (wage-and-hour case resulting in 58.5 million settlement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (wage-and-hour case resulting in $440,000 settlement). Moreover, "these cases are an extremely limited sample of the totality of cases in which fees were awarded from common fund settlements." *McGreevy*, 258 F. Supp. 3d at 386. The empirical studies cited above, which together survey hundreds of cases, paint a far more comprehensive picture of the average percentage awarded to counsel in common fund settlements, thereby minimizing any potential sampling biases.

Finally, the magnitude and complexity of this case favor the adoption of a "baseline fee percentage that falls in the [lower] end of the median fees found by the empirical studies." *Id.*

5

This case is not very complex. Rather, this case "involve[s] a single claim involving a single statutory provision and a single form." *Hillson v. Kelly Servs. Inc.*, No. 2:15 Civ. 10803, 2017 WL 3446596, at *4 (E.D. Mich. Aug. 11, 2017). As in the *Hillson* case, here too there already existed extensive case law supporting Plaintiff's FCRA claim premised on a stand-alone disclosure requirement at the time his case was filed. In addition, while Plaintiff's need to prove the willfulness of PBC's conduct may "have been challenging as a factual matter, [ ] the nature of the task was not complex." *See id.* Furthermore, as reflected by this case's record, Plaintiff's case for PBC's liability was never vigorously contested, as the parties settled early in the litigation before engaging in any extensive discovery (Dkt. Nos. 20, 21) and there have been no objections to the proposed settlement (Dkt. No. 52 ¶ 14). Finally, Class Counsel's emphasis on the inherently complex nature of Rule 23 class actions does not move the needle, as this fact is true of all class actions and is thus presumably fully accounted for by the Court's reliance on fees awarded in other Rule 23 common fund cases.

Mindful that in the Rule 23 context the Court acts as a fiduciary that must "serve as a guardian of the rights of absent class members," *Goldberger*, 209 F.3d at 52 (internal quotation marks omitted), the Court concludes that a reasonable baseline for this case is 27%. Applying that baseline here renders the baseline attorney's fees award for this case as $321,914.25.

### 2. Consideration of Risk, Result and Policy Considerations

The Court now examines the three remaining *Goldberger* factors—the risk of the litigation, the quality of representation and any remaining policy considerations—in order to consider whether there is any basis for further adjusting the reasonable baseline fee in this case.

#### a. Risk of Litigation

Class Counsel took considerable, but not extraordinary, risk in prosecuting this case. Class Counsel represent that they took this case on a contingency basis and have invested over

6

450 hours of work and advanced around $16,537.57 of costs.  (Dkt. No. 57 at 13–14.)  Class Counsel also assert that this case was a risky undertaking due to the factual and legal hurdles of proving the willfulness of PBC's conduct.  (Dkt. No. 57 at 7.)  For example, Class Counsel note that absent a showing of willfulness, Plaintiff and Class Counsel would not have recovered anything under the FCRA, because Plaintiff sought only statutory damages which are available only for willful violations.  (*Id.*)

However, very little discovery had taken place in this case before the parties settled, and PBC never filed any dispositive motions throughout the proceedings.  As this case was resolved rather swiftly, Class Counsel's investments of time and money were never made in the face of a particular hurdle to their clients' recovery.  The Court is also mindful that contingency risk does "not always compel enhanced fees," especially where such an enhanced fee would result in overcompensation.  *Goldberger*, 209 F.3d at 53.  Accordingly, as in other cases involving similarly few risks beyond the risks generally inherent to litigation, "the risk in this case was not so unusual as to merit a change in the reasonable baseline fee for this case."  *See McGreevy*, 258 F. Supp. 3d at 387.

### b. Quality of Representation

The Court next considers whether the quality of counsel's representation warrants adjusting the reasonable baseline fee. "[T]he quality of representation is best measured by results, and that such results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Goldberger*, 209 F.3d at 55 (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir. 1976)).

The result obtained by Class Counsel in this settlement is good. The terms of the parties' settlement allow for each class member to obtain a gross recovery of $51.54. (Dkt. No. 55 at 10.)[1] This payout is generally in line with other FCRA class action settlement recoveries across the country. *Hillson*, 2017 WL 3446596 at *3 (approving per capita gross recovery of $30 and citing cases approving similar payouts); *Moore v. Aerotek, Inc.*, No. 2:15 Civ. 2701, No. 2:16 Civ.1066, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017) (approving per capita gross recoveries between $13 and $80); *Lengel v. HomeAdvisor, Inc.*, 15 Civ. 2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (per capita gross return of $115.15). Because the class members could have obtained statutory damages ranging from $100 to $1000 if they had prevailed in trial, 15 U.S.C. §1681n(a)(1)(A), the class members are receiving only approximately 5% of their maximum potential recovery. But considering the factual and legal hurdles that the class would have had to overcome before securing a favorable judgment, the current settlement represents a

---

[1] However, since only approximately 8% of the class members have submitted valid claims forms, and the terms of the parties' settlement provide that the Net Settlement Fund would be distributed equally among all participating class members, the class's per capita gross recovery is now $227. Though this figure is much higher than the per capita recoveries in other FCRA disclosure settlements, the Court will not allow the low return rate of claim forms in this action to boost Class Counsel's fee.

good result for the class members. Such a good result, however, is not so exceptional as to merit an increase in the baseline percentage, especially where the Court does not have the benefits of an adversarial examination of the issues. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) ("Without the benefit of an adversarial examination of the issues, there is no reason on the submissions before the Court to conclude that the result is so exceptional as to warrant an increase in the baseline percentage.").

### c. Policy Considerations

The last *Goldberger* factor calls for this Court to evaluate whether public policy considerations counsel in favor of adjusting the reasonable baseline fee. Plaintiff's FCRA claim implicates the genuine public interest in the protection of consumer privacy. Private litigation is a particularly important mechanism by which this public interest is vindicated in the employment context, given the power asymmetry between employers and job applicants and the lack of other remedies for job applicants whose private information is shared with employers without required disclosures. Since recoveries under the FCRA for such violations are generally low and individuals may not have enough incentives to bring claims to vindicate their rights, ensuring appropriate incentives for attorneys to bring such claims as class actions is crucial to attaining the goals of consumer privacy protection embodied in the FCRA. That said, the public policy concerns implicated by the FCRA do not differentiate this case from other types of common fund cases also reflecting important policy goals—for example, wage-and-hour or securities fraud cases that provide protections to workers or investors. Therefore, while public policy weighs in favor of incentivizing class actions such as Plaintiff's FCRA lawsuit, that incentive argument is not unique to this case and thus does not warrant increasing the baseline percentage here.

What does distinguish this case from other common fund cases is the reversionary nature of the settlement fund, which the Court concludes merits a reduction to the baseline percentage. When some portion of a common fund goes unclaimed, there are generally four ways of distributing it: "(1) reversion to the defendant; (2) *pro rata* redistribution among the class members who did make claims; (3) escheat to the state; and (4) *cy pres* distribution to charitable organizations." Rubenstein, *supra*, § 12:29. Reversion, the method adopted by the parties in this action, is the least favored of these four methods because of its potential to create perverse incentives. *Id.* In particular, if attorney's fees are pegged to the size of the fund made available prior to reversion, it might "decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery." *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1223 (2000) (O'Connor, J., statement respecting the denial of the petition for a writ of *certiorari*); *see also McGreevy*, 258 F. Supp. 3d at 388. Since participation rates in common fund cases are generally low to begin with, 2 *McLaughlin on Class Actions* § 6:24 (13th ed. 2018) (explaining that "[c]laims-made settlements typically have a participation rate in the 10-15 percent range"), a defendant may have an incentive to settle for a nominally high amount under a reversionary structure, because much of that settlement will eventually return to the defendant's coffers. Class counsel also have incentives to acquiesce in such arrangements if an attorney's fees award is calculated based on the gross settlement amount prior to reversion. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (suggesting that "the parties['] creat[ion of] a reverter that returns unclaimed fees to the defendant may provide a "subtle sign[] that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.") (citation omitted).

Such is the case here. The settlement here has been structured such that 40% of the Net Settlement Fund will never be paid out by PBC, because the participation rate of class members is lower than 60%. (Dkt. No. 55 at 10.) However, the attorney's fees award requested by Class Counsel is calculated as one-third of the gross settlement amount prior to that reversion. (Dkt. No. 57 at 1.) Given that this case's class members will actually receive only $426,510 from PBC, granting Class Counsel's request of $397,387 in fees would result in nearly half of PBC's net payout going to Class Counsel. This result would appear to be just the sort of misallocated distribution "between attorney's fees and the plaintiffs' recovery" flagged as problematic by Justice O'Connor. *Int'l Precious Metals Corp.*, 530 U.S. at 1223.

Weighing the significant policy considerations against such reversionary settlements and the low participation rate of class members alongside the important goals of encouraging lawyers to bring common fund cases to vindicate consumers' rights under the FCRA, the Court concludes that a decrease of 5% of the baseline fee percentage is appropriate in this case. Applying the resulting 22% rate to the common fund figure of $1,192,275 results in an attorney's fees award of $262,300.50.

### 3. Lodestar Cross-Check

The third step this Court takes is to use the lodestar as a "cross-check" on the reasonableness of the percentage awarded. *See Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (2d Cir. 1995). A reasonable fee award under the lodestar approach is generally calculated as "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

A reasonable hourly rate is determined by the "prevailing market rate," that is, the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The relevant community, in turn, is the district in which the court sits." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005) (citation omitted).

Class Counsel represent that Mr. Dion-Kindem and Mr. Blanchard each charge an hourly rate of $875, while Mr. Edelman and Mr. Hill each charge an hourly rate of $500. (Dkt. No. 57 at 5.) To support their claimed hourly rates, Mr. Dion-Kindem and Mr. Blanchard rely on the Laffey Matrix for attorney billing rates, which purportedly represents reasonable rates in the Washington D.C.-Baltimore area. (Dkt. No. 57-1 at 6–7; Dkt. No. 57-2 at 6–7.) Mr. Dion-Kindem and Mr. Blanchard also rely on salary tables for the Washington-Baltimore-Arlington and Los Angeles-Long Beach areas. (Dkt. No. 57-1 at 9, 11; Dkt. No. 57-2 at 9, 11.) Whatever the reasonable rates may be in those areas, they are not "prevailing market rates" in the Southern District of New York. As for Mr. Edelman and Mr. Hill, neither provides any documentation to substantiate the reasonableness of their proposed rates.

Since courts in this District rarely discuss the reasonable billing rates in FCRA cases, this Court looks to general consumer cases in this District for guidance. It appears that the reasonable hourly billing rate for partners in consumer cases in this District is around $300 per hour. *See e.g.*, *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 371 (S.D.N.Y. 2009) (finding $300 per hour was a reasonable rate in a case involving a FCRA claim); *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 635 (S.D.N.Y. 2012) (finding $300 per hour was a reasonable rate for a consumer law attorney with more than twenty-three years of experience); *Jara v. P.N. Fin., Inc.,* No. 10 Civ. 6274, 2014 WL 4388515, at *7 (S.D.N.Y. Sept. 4, 2014) (concluding that "[t]he rates of $300 per hour for a partner with seventeen years of experience . . . appear to be reasonable" in a consumer protection case); *Recca v. Asset*

*Maximization Grp., Inc.*, 15 Civ. 7667, 2016 WL 1275052, at *2 (S.D.N.Y. Mar. 31, 2016) (collecting cases awarding $300 per hour). Based on the quality of the work performed by Class Counsel and the prevailing rates in this District, this Court will apply $300 per hour as the reasonable hourly rate for Class Counsel.

The Court now considers the reasonableness of the number of hours worked by Class Counsel, which Class Counsel represent to have been 450.4 hours. (Dkt. No. 57 at 5.) Other than Mr. Edelman (Dkt. No. 57-3 at 7–9), none of Class Counsel have submitted any timesheets to substantiate their representation of the time spent in this case. Despite this shortcoming, the Court will take their representations as true, given that "where [the lodestar is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *See Goldberger*, 209 F.3d at 50. Multiplying the 450.4-hour total by the adjusted $300 hourly rates yields a recalculated lodestar of $135,120.

Having conducted this cross-check, the Court concludes that the $262,300.50 fee award calculated under the percentage method is reasonable. That percentage fee results in a lodestar multiplier of 1.94, which closely aligns with the median multiplier in consumer cases of 1.82. *See* Eisenberg & Miller, *supra*, at 272, Table 14; *see also Velez v. Novartis Pharm. Corp.* No. 4 Civ. 9194, 2010 WL 4877852, at *23 (finding a lodestar multiplier of 2.4 falls within the range of multipliers accepted within the Second Circuit).

Based on the foregoing, the Court concludes that Class Counsel is entitled to a fee award of $262,300.50.

**B.     Costs**

Class Counsel also seek reimbursement of $74,507.79 in costs. (Dkt. No. 56.) This figure is the sum of the out-of-pocket expenses incurred by Class Counsel and the expenses incurred by the settlement administrator. (Dkt. No. 57 at 14–15.) Class Counsel describe these

expenses as consisting of "filing fees, postage, copies, legal research, mediator expenses, and travel for mediation," expenses which are typical to prosecuting this type of litigation. (Dkt. No. 57 at 20.) Counsel is entitled to reimbursement for these expenses. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); *see also* Fed. R. Civ. P. 23(h). Class Counsel's motion for costs is accordingly granted.

### C. Named Plaintiff's Service Award

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013). Class Counsel move for a service award of $5,000 for Plaintiff Grice on the basis of his "considerable time assisting with the [case's] investigation," the "significant risk [he took] by attaching his name and reputation to this litigation," and his "commit[ment] to advancing the Settlement Classes' interests." (Dkt. No. 57 at 15–16.) The Court agrees with Class Counsel that such an award is appropriate to compensate Grice. Therefore, the motion for a $5,000 service award for Grice is granted.

## IV. Conclusion

For the reasons stated at the fairness hearing of November 15, 2018, the Court certifies the proposed class and determines the settlement to be fair, reasonable and adequate under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiff's motion to certify the proposed class and approve the settlement are GRANTED. And for the reasons stated above, Plaintiff's motion for attorney's fees, costs, and a service award for Plaintiff Grice is GRANTED in part and DENIED in part.

Class Counsel is hereby awarded attorney's fees of $262,300.50 and reimbursement of expenses of $16,537.57. American Legal Claims Services is awarded reimbursement of administrative costs of $57,970.22. Plaintiff Grice is awarded a service award of $5,000.

The "Effective Date" of the settlement shall be the fifth business day after the expiration of the applicable appellate period. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved. This Order shall constitute a judgment for purposes of Federal Rule of Civil Procedure 58.

Within seven days of the Effective Date, Defendant shall deposit sufficient funds with the settlement administrator, American Legal Claims Services, so that the settlement administrator may distribute funds in accordance with the Settlement Agreement.

Within fourteen days of Defendant's depositing sufficient funds with the settlement administrator, the settlement administrator shall distribute funds in the settlement account by making payments in the order below:

a. Paying Class Counsel $262,300.50, as directed by Class Counsel;

b. Reimbursing Class Counsel $16,537.67 litigation costs and expenses, as directed by Class Counsel;

c. Paying American Legal Claims Services $57,970.22 for settlement administration services;

d. Paying a service award of $5,000 to named Plaintiff Altareek Grice; and

e. Paying class members who timely submitted valid claim forms their pro rata share of $510,280.02, as further described in the Settlement Agreement.

The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, and overseeing the distribution of the settlement funds. The parties shall abide by the terms of the Settlement Agreement, which are incorporated herein, and this Order.

Upon the Effective Date, this litigation shall be dismissed with prejudice, and all class members who have not excluded themselves from the settlement shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the Settlement Agreement.

This Opinion and Order hereby amends the Opinion and Order entered on January 11, 2019 at Docket Number 64.

The Clerk of Court is directed to close the motions at Docket Numbers 54, 56, and 61.

SO ORDERED.

Dated: January 28, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge